# Richmond.

GEORGE W. SAGER v. W. T. RAWLEIGH COMPANY.

November 14, 1929.

The opinion states the case.

*D. O. Dechert* and *Ralph H. Bader*, for the plaintiff in error.

*John Paul*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

The W. T. Rawleigh Company, plaintiff below, is an Illinois corporation, engaged in the manufacture and sale of merchandise. George W. Sager is a citizen of Virginia and a successful business man and orchardist, whose home is Timberville, Va.

During the year 1924, one Martin contracted with this manufacturer for the purchase of its products, and in 1925 a similar contract was made. As a condition precedent to any extension of credit Martin was required by the plaintiff to secure a guaranty from three substantial citizens. That guaranty is in writing, appears in the record and takes up a full printed page. It contains these among other provisions:

"We, the undersigned, do hereby jointly and severally enter ourselves as sureties and do hereby unconditionally promise and guarantee the full and complete payment of the balance due or owing said seller for goods previously sold and delivered to the buyer as shown by its books at the date of the acceptance of this contract of surety by the seller, and also promise and guarantee the full and complete payment of all moneys due or owing or that may become due or owing said seller and all indebtedness incurred by the buyer under the terms of the above and foregoing instrument by the buyer named as such therein; and to all the terms, provisions and agreements contained in said instrument we fully assent and agree."

This contract of guaranty was sent on to the plaintiff and accepted by it in good faith and without knowledge of any wrong perpetrated in its procurement. Credit based thereon was afterwards extended to Martin, in

consequence of which he now owes $797.25. Judgment was obtained against him, but it is apparently worthless, hence this motion for judgment against the guarantor, Sager. He pleaded fraud in the procurement of the contract, and said that he was guilty of no negligence.

In lieu of evidence, this certificate of facts appears in the record:

"That the guarantee forming a portion of said contract was signed by R. T. Thornton, D. J. Campbell and Geo. W. Sager, each in person; that the said Sager is unable to read and can write only sufficiently to write his own name and that of one other person, namely, John W. Gordon; that about seven months prior to the signing of the guaranty involved in the action, said Sager, Thornton and Campbell had signed a similar paper, in like words and figures, except that the same was to cover the purchases of Frank Martin from the plaintiff during the year 1924; that the signature of each of said Thornton, Campbell and Sager to said first guaranty was obtained by said Martin by the representation to each of them that the same constituted a recommendation of said Martin as to his good character (and in the case of said Sager, as having done satisfactory work in the laying of a pipe line for him); that each of said Thornton, Campbell and Sager was assured by said Martin at the time of and immediately prior to his so signing said guaranty that the same would in no wise involve the signer in any liability financially, and that said guaranty was limited in its scope to the matter of the character of said Martin, and in the case of Sager to the matter of such good character and to the satisfactory laying of said pipe line; that said Martin was, at the time of the execution of said guaranty, and during the prior

acquaintance of said Sager with him, in good repute, in the community in which they both lived, as a man of good character; that from Sager's testimony Martin read to Sager the paper, which testimony Sager afterwards modified by saying that Martin read to him 'a couple of lines' of the paper with the statement that the rest of it, 'I got to fill up, you have nothing to do with that'; and that the portion as read conformed to Martin's previous representation as to its contents; that no person able to read was immediately at hand, and that only two other persons were near by, in Sager's orchard, who were employees of said Sager, as to whom did not know whether they could read; that the second paper was tendered to said Sager, who signed the same relying on the representation of said Martin that its contents were exactly like those of the first guaranty, which he stated had been lost by him while on a visit to relatives; that said Martin was in no sense an agent of the plaintiff, but bought merchandise from it for the purpose of reselling the same; that said Sager is a successful business man for his community, Timberville, Virginia; that said Sager has habitually had all papers and correspondence executed and had with him read by third persons, and all letters from him written by third persons; that during the period referred in the contract sued on, and guaranteed by said Thornton, Sager and Campbell, said Martin became indebted to said plaintiff in the sum of $797.29, which remained unpaid and for which plaintiff heretofore obtained a judgment against said Martin in a court of competent jurisdiction in the State of Illinois; that plaintiff, as testified by its witnesses, upon the acceptance by plaintiff of said contracts, promptly notified each of said guarantors by letter that the same had been accepted, but the guarantors testified that none of them received such letter."

At the trial one instruction was given for the plaintiff:

"The court instructs the jury that even if they believe that the signature of the defendant was obtained to the contract of guaranty by the misrepresentation of Martin, if they believe that the plaintiff company had no knowledge of this misrepresentation and accepted the contract in good faith, then they must find for the plaintiff."

This was tendered on behalf of the defendant and refused:

"The court instructs the jury that if they believe from the evidence that the paper writing sued on in this case at the time of the signature was represented to the defendant, Sager, by Frank Martin to constitute only a recommendation of said Martin as to character, and not as in any way binding said Sager for any financial liability, and if they further believe from the evidence said Sager was unable to read, and that said Sager signed said writing relying upon said representation of said Martin; then they must find that the signature of said Sager was fraudulently procured, and said paper writing not binding upon said Sager."

To all of which proper exceptions were duly taken.

In due course, plaintiff took judgment.

There are three assignments of error, based upon—

1. The refusal of the instruction tendered by the defendant;

2. The granting of that tendered by the plaintiff;

3. The refusal of the court to set aside the verdict returned for the plaintiff as contrary to the law and the evidence.

All involve the same questions and for convenience will be considered together.

The law in England appears to be with the defendant. *Carlisle Cumberland Banking Co.* v. *Bragg*, 1 K. B. 489.

These facts there appear: "The action was upon a document which purported to be a continuing guaranty by the defendant, up to the amount of 150£, of the payment by one Rigg to the plaintiffs of any sum which might at any time thereafter be or become due from him to the plaintiffs on the general balance of his banking account with them.

"The defendant in his defense denied that he signed the guaranty upon which the action was brought, and alleged that, if he did, his signature to the same was fraudulently obtained by Rigg, who falsely represented to him that the said guaranty was an insurance paper."

The jury in answer to interrogatories propounded found that the defendant was induced to sign the guaranty by the fraud of Rigg; that he did not know the document which he signed was a guaranty; that he was negligent in signing it and that Rigg was not agent for the bank.

Williams, L. J., said: "It seems to me that on those findings alone the defendant would be entitled to say in respect of this guaranty that it was not, in contemplation of law, signed by him. His signature was obtained by fraud, and it is manifest, on the evidence and the findings of the jury, that he was not intending to sign any such document. What he was intending to sign was some document with reference to insurance. It appears to me that under the circumstances of this case the mere fact that the jury have found that there was negligence on the part of the defendant does not raise such an estoppel as prevents the defendant from setting up the defense that he never signed the guaranty and that his signature to the document was obtained from him by fraud; that he did not know of its nature, or intend to sign a document of that description."

Kennedy, L. J., said: "The principle involved, as I

understand it, is that a consenting mind is essential to the making of a contract, and that in such a case as this there was really no consensus, because there was really no intention to make a contract of the kind in question." See also *Thoroughgood's Case*, 6 Eng. Rul. Cas. 229.

▮ It thus appears that in England a guaranty signed by one who was ignorant of its contents and did not know that he was signing a guaranty at all is void for the reason that there was no consenting mind.

In this country this issue in some States turns upon the question of negligence. When there is no negligence there is no liability. *Griffiths* v. *Kellogg*, 39 Wis. 290, 20 Am. Rep. 48; *Schuylkill County* v. *Copley*, 67 Penn. St. 386, 5 Am. Rep. 441; *Page* v. *Krekey*, 137 N. Y. 307, 33 N. E. 311, 312, 21 L. R. A. 409, 33 Am. St. Rep. 731; *Green* v. *Wilkie*, 98 Ia. 74, 66 N. W. 1046, 36 L. R. A. 434, 60 Am. St. Rep. 184.

This test has not generally been approved; in its place equitable considerations have come to govern.

Judge O'Brien, in *Page* v. *Krekey*, *supra*, said: "Such cases are not governed by the rules applicable to the *bona fide* holder of negotiable paper procured by fraud, but by the equitable rule that where one of two innocent parties must suffer, he who has put it in the power of a third person to commit the fraud must sustain the loss.". This statement is also quite satisfactory.

"The question is which of two innocent parties shall suffer by a fraud perpetrated by a third person, and it is more consonant with public policy as well as sound morals that he who by permitting himself to be deceived has put it in the power of another to defraud and influence a third person should himself suffer

rather than the latter." *McWilliams* v. *Mason*, 31 N. Y. 294, note, 28 C. J., page 927.

Text-writers appear to be of one mind.

"If the principal, by fraud, induces the surety to become bound, but the obligee has no notice thereof, such fraud will, as a general rule, be no defense to the surety." Brandt on Suretyship and Guaranty, (3d ed.), section 456.

"Any fraud, deceit or concealment amounting to fraud practiced on the surety by the principal with the knowledge of the creditor will likewise avoid the contract; but if the principal practices a fraud on the surety, of which the creditor has no knowledge, even though such fraud results in inducing the surety to make the contract, the surety will not, on that account, be released from his liability to the creditor; nor will the surety be relieved if the fraud be practiced by a third person." Elliott on Contracts, section 3938.

"While the law requires the guarantee to act in good faith, unless he has knowledge of or participates therein, he is not responsible for any misrepresentation or deception practiced by the principal, or other third person, upon the guarantor in order to induce him to enter into the contract of guaranty. But if the guarantee participates in false representations or fraudulent concealment of facts, which operate to induce the making of a contract of guaranty, the guarantor may set up such fraud as a defense in an action upon the guaranty." 38 C. J., page 927.

"In an action on a contract of guaranty, fraudulent representations or concealment by the principal or his agent not participated in by the guarantee, operating to induce the guarantor to enter into the contract, cannot be availed of as a defense to defeat a recovery on the guaranty." 39 Am. & Eng. Anno. Cases, page 505.

The United States Supreme Court, in *Mason Lumber Co.* v. *Buchtel*, 101 U. S. 633, 25 L. Ed. 1072, had occasion to consider this subject. In the first paragraph of the syllabus is this statement: "Where one agreed to sell to another certain pine lands, a deed to be made upon the payment of the purchase price, and cutting of the timber was meanwhile prohibited unless written permission was given by the vendors, and the vendee assigned the contract to a third person, to whom the vendor gave permission to cut and remove the timber upon his guaranteeing the payment of the purchase price, he cannot be released from such guaranty upon any false and fraudulent representation made to him by the agent of the vendee, of the making of which the vendor was ignorant."

In *J. R. Watkins Medicine Co.* v. *Hargett*, 209 Ala. 165, 95 So. 811, 812, it appears that the defendant executed a contract of guaranty much like this in judgment. In a special plea he claimed that he was induced to sign it by the false representations of one Pace, who said that it was a simple recommendation. There was a demurrer to this plea which the appellate court said should have been sustained, and in the course of its opinion observed: "The real question is: Which of two innocent parties shall suffer by a fraud perpetrated by another? The answer is found in the principle of justice and morals, often followed by this court, which imposes the loss upon the party who, by his misplaced confidence, has enabled another to commit the fraud."

The same conclusion was reached by the Supreme Court of Oklahoma in *J. R. Watkins Medical Co.* v. *Coombes*, 66 Okla. 126, 166 Pac. 1072.

In *Cresap* v. *Furst and Thomas*, 141 Miss. 30, 105 So. 848, 849, Cresap is shown by the record to have

guaranteed the payment of an account made by one Farris and was induced to do so because two other names there appeared as joint guarantors on his contract. The court said: "The rule seems to be well settled in all jurisdictions that a guarantor is not released from the debt of a principal debtor where the guarantor's signature is obtained by fraud of the principal debtor, unless the guarantee, or obligee, participates in or has knowledge of the fraud. In the case before us it conclusively appears that appellees accepted the contract of guaranty at their place of business at Freeport, Ill., and they had no knowledge that any one of the signatures of the guarantors had been forged; therefore the appellant was liable as guarantor of the account of the principal, H. M. Farris."

In *W. T. Rawleigh Co.* v. *Brown*, 143 Miss. 895, 108 So. 720, 721, the same conclusion was reached. The court said: "Dyar was the principal in the bond, and the appellees were the guarantors, and the obligee was not bound by anything that occurred between the principal and the obligors which might have induced the obligors to sign the bond."

In *Saginaw Medicine Co.* v. *Batey*, 179 Mich. 651, 146 N. W. 329, 335, the defendant signed a guaranty on which credit was extended. He claimed that he was illiterate and could not understand the words used in this contract. There was a motion for a directed verdict for the plaintiff. The trial court refused to give it and this ruling was held on appeal to be error. The court quoting from *Davis Machine Co.* v. *Buckles*, 89 Ill. 237, said: "A surety or guarantor cannot interpose the fraudulent or false representations of his principal as a defense to the payment of a note or bond, without connecting the payee with such representations."

*W. T. Rawleigh Co.* v. *Hoffman*, 162 Minn. 57, 202 N. W. 54, presents facts quite like those in this case. There was a guarantee by the defendant, Johnson, who said that Hoffman asked him to sign a paper showing that he was of good reputation. This Johnson did, apparently without reading it. All evidence relative to this was stricken out by the trial court, and its action was affirmed upon appeal. The court said that even if Hoffman were to be treated as agent for the plaintiff, this act was not in the scope of his agency. It is to be observed here that the court did not base its judgment upon Johnson's negligence in failing to read the contract. To the same effect is *J. R. Watkins Medical Co.* v. *Montgomery*, 140 Ark. 487, 215 S. W. 638.

In *First National Bank of Parkersburg* v. *Johns*, 22 W. Va. 520, 46 Am. Rep. 506, syllabus, it was said: "The *bona fide* indorser of negotiable paper for value takes valid title although the maker's execution was procured by fraud and under the supposition that he was not signing a note, and this without regard to his negligence or care." It is true that in this case the paper was negotiable, but the underlying principle is the same. A man should not be permitted to put afloat paper, whether negotiable or non-negotiable, and afterwards to deny its validity in the hands of one who has in good faith extended credit thereon, and this though the maker may have been wholly innocent.

Mr. Daniel in his work on Negotiable Instruments, section 850, said: "It is generally agreed that if the party is guilty of any negligence in signing the paper, he is bound; and the act itself, it seems to us, can hardly be committed without negligence."

And so in the instant case. If the defendant was negligent, he would be liable in any event.

■ What are the facts? Sager was a successful business man and so we may presume that he was intelligent though not literate. He had already signed one paper purporting to certify to Martin's good character, exactly like that last presented to him. Why was he called upon to sign another. He did not even require that Martin read it, and Martin did not pretend to read but two lines. On its face it was a formal document, probably printed, and covering, as we have seen, a full page of the record. Ordinary prudence should have suggested that it was more than a simple certificate of character. The trial court might well have held, as a matter of law, that the defendant was guilty of some negligence.

■■ However this may be, we are of opinion that as between plaintiff and defendant, the equities are with the plaintiff. It did nothing, while the defendant set in motion a series of causes, innocent though he may have been, which resulted in loss to another who had every reason to rely and did rely upon them. The weight of authority in this country and the juster rule hold with the plaintiff. Men should learn to lend their endorsements with caution. Common prudence requires that those who are unable to read should at least not sign contracts or writings without having them first read by some disinterested party. Martin was not disinterested; it was for his benefit that this paper was being signed.

It only remains for us to examine the position taken by this court on this subject.

Defendant relies upon *Harrison* v. *Middleton*, 11 Gratt. (52 Va.) 527, where the court said: "But when, as in this case, a deed is introduced collaterally as evidence, it must be proved by the party introducing it, according to the rules of law; and the other party,

without any denial of the deed on oath, may assail it by any evidence which shows, or tends to show, that it is not his deed; indeed, by any evidence which would be admissible on the plea of *non est factum*. He may, therefore, introduce evidence tending to show that there was fraud in the execution of the instrument, as that it was misread to him, or his signature obtained to a different instrument from the one he intended to sign. *Taylor* v. *King*, 6 Munf. 358 [8 Am. Dec. 746]; *Dorr* v. *Munsell*, 13 John. R. [N. Y.] 430; *Van Valkenburgh* v. *Rouk*, 12 *Id.* [Johns. (N. Y.)] 337."

In that case the fraud was perpetrated by the plaintiff himself who had drawn the deed and had obtained the signature of the defendant by misreading it to him.

We are cited also to *Hayes and wife* v. *Virginia Mutual Protection Ass'n*, 76 Va. 230. In that case one McNamara was charged to have made certain misrepresentations in his application for a policy of insurance. Suit was brought on that policy and of course these misrepresentations constituted a defense.

In these two Virginia cases, the parties to the fraudulent transaction were parties to the litigation and as between them it is everywhere competent to show fraud.

There are likewise certain expressions, by way of dicta, used in *Taylor* v. *King* (1819), 6 Munf. (20 Va.) 358, 8 Am. Dec. 746, which tend to support the English rule.

In *Griffith* v. *Reynolds*, 4 Gratt. (45 Va.) 46, Reynolds obtained an injunction against the judgment of the Circuit Court of Alleghany county, wherein he and one Byer were the judgment debtors. In his bill he claimed that he could neither read nor write, but that Byer had approached him, saying that he had bought certain lands from Griffith and needed a surety on his

purchase money land bonds, that these land bonds were well secured and could be endorsed with entire safety. In compliance with this request Reynolds did sign certain bonds for Byer which turned out not to be land bonds at all. In other words, he did not sign the bonds he thought he was signing. A plea of *non est factum* was filed, but was withdrawn because of misrepresentations made by Byer *in pais.* The injunction granted by the trial court was dissolved on appeal. Baldwin, J., said: "The court is of opinion that the appellee has not only failed to prove that his execution of the obligation in the proceedings mentioned, as surety for his co-obliger, Byer, was procured by the alleged fraudulent conduct of the latter, but has not, even upon the face of his bill, shown any ground whatever for being relieved, whether at law or in equity, from payment of said obligation to the appellant, the creditor therein; there being no pretense that the appellant was in any wise implicated in the alleged fraud. The court is therefore of opinion that the said decree of the said circuit court is erroneous; and it is adjudged, ordered and decreed that the same be reversed and annulled, with costs against the appellee, Reynolds."

While the plea of *non est factum* was withdrawn in this case, that had little to do with the judgment. It was heard upon its merits.

In *Atlantic Trust Co.* v. *Union Trust Corp.,* 110 Va. 286, 67 S. E. 182, 184, 135 Am. St. Rep. 937, this court said: "It is well settled that a person proposing to become surety for the conduct or contracts of another has a right to be treated with perfect good faith. The law does not as a rule, however, require that the party taking the surety shall seek out the surety and explain to him the nature and extent of the obligation, nor does

it hold him responsible for fraudulent misrepresentations made to the surety by the principal, or by a third party, unless such misrepresentations are made with his knowledge or consent. See *Hamilton* v. *Wilson*, 11 Clark and Fin. 109; *Atlas Bank* v. *Brownell*, 9 R. I. 168, 11 Am. Rep. 231; *Griffith* v. *Reynolds*, 4 Gratt. 46, 49, 50; *Magee* v. *Manhattan L. Ins. Co.*, 92 U. S. 93, 23 L. Ed. 699; *Warren* v. *Branch*, 15 W. Va. 21; Brandt on Suretyship, section 447; Bayless on Sureties, 293; Kerr on Fraud and Mistake, 122, 123; 1 Chitty on Contracts, pages 772, 773."

We think the principle here stated governs the case in judgment, and it may be said in passing that the court, in its enunciation, made no reference to negligence. These cases and the majority rule do not rest upon negligence but upon a broader base. It comes back to this: "Where one of two innocent parties must suffer by a fraud perpetrated by another, the law imposes the loss upon the party who, by his misplaced confidence, has enabled the fraud to be committed."

The judgment of the trial court is right, and is affirmed.

*Affirmed.*