J. R. WATKINS COMPANY, Respondent, vs. BEYER, imp.,
Appellant.

*April 4—April 29, 1930.*
*October 18, 1930—February 10, 1931.*

398

For the appellant the cause was submitted on the brief of *Bundy, Beach & Holland* of Eau Claire.

For the respondent there was a brief by *Linderman, Ramsdell & King* of Eau Claire, and oral argument by *George Y. King.*

The following opinion was filed April 29, 1930:

FOWLER, J. It is apparent that if Menning was the agent of the company in procuring defendant's signature to the guaranty, the jury's findings of representation by Menning that he was not indebted to plaintiff and reliance by the defendant on such representation without negligence on his part voids the contract of guaranty.

The contract in suit and many others very similar have been before the courts of several states. The contracts are cunningly devised to enable foreign corporations to evade the common statutory provisions requiring them to file their

articles in a state as condition precedent to doing business therein and to avoid liability for the acts of their salesmen on the ground that they are not agents. Many attacks upon them upon many grounds have been made by entrapped guarantors. The three courts that have passed upon the question of the peddlers' agency here involved have taken opposite positions, one on one side and two on the other.

The case of *Saginaw Medicine Co. v. Batey,* 179 Mich. 651, 146 N. W. 329, in passing upon a contract precisely the same as the one in suit, holds that the peddler who procured the signature of the guarantor was not the agent of the company, basing its ruling on the ground that a guarantee is not bound by misrepresentations made to the guarantor by his principal, who of his own motion and for himself procures the guarantor to sign. This rule is correctly applied where the contract of guaranty is made between the principal and the guarantor. But where the guarantee procures a person, whether the principal or some disinterested person, to procure the signature of the guarantor to a contract of guaranty of payment of a past indebtedness entered into directly between himself and the guarantor for the guarantee's benefit, for a consideration paid by the guarantee to the guarantor, the rule upon reason should be and by adjudicated cases is otherwise. *Dr. Koch M. T. Co. v. Poitras,* 36 N. Dak. 144, 161 N. W. 727; *W. T. Raleigh Co. v. Warren,* 47 S. Dak. 319, 198 N. W. 555; *Furst v. Risse* (S. Dak.) 229 N. W. 293. In such case, as pointed out by Mr. Justice BRUCE in the *Poitras Case, supra,* the principal acts in a dual capacity. He not only procures a guaranty of payment of his future purchases, but of payment of a past indebtedness, the latter not for his benefit, for he is bound to pay it anyhow, but for the great benefit of the guarantee. The Michigan case does not mention and apparently failed to consider the force and effect of the recital in the guaranty "in consideration of the payment of one dollar by the guar-

antee to the guarantor, the receipt whereof is hereby acknowledged by the guarantor," which indisputably evidences that the contract was conceived as made and in fact was made directly between the guarantee and guarantor. The principal acted for the company in procuring the signature to the guaranty of payment of the past indebtedness. The company had to act through some one in procuring this signature. The principal was as much their agent in getting it as any third person whom they might have directed to procure the signature would have been. The agent's fraud was the company's fraud and vitiates the contract.

The South Dakota court in the case last cited distinguishes between the validity of a contract such as is here involved as to indebtedness for future purchases and past indebtedness where both are covered by the contract, holding the contract void as to the latter but valid as to the former. It is not necessary for us to rule respecting such distinction, for the purchases made by Menning during the term of the contract guaranteed by the defendant were fully paid for by the application by the plaintiff of the defendant's payments during the term to those purchases.

The defendant being entitled to judgment dismissing the complaint upon the findings of the verdict above stated, no reason appears for discussing any other assignments of error.

*By the Court.*—The judgment is reversed, with directions to enter judgment dismissing the complaint on the merits.

Appellant moved for a rehearing, which was granted, and the cause was reargued.

For the appellant the cause was submitted on the briefs of *Bundy, Beach & Holland* of Eau Claire.

For the respondent there were briefs by *Linderman, Ramsdell & King* of Eau Claire and *D. E. Tawney* and *J. M.*

*George* of Winona, Minnesota, and oral argument by *Mr. Tawney.*

The following opinions were filed November 11, 1930:

## ON REARGUMENT.

ROSENBERRY, C. J.   In this case a motion for rehearing was made and granted.   The case has been reargued and reconsidered.   Upon a reconsideration of the whole case the court is of the opinion that it was in error in holding that Menning was the plaintiff's agent in procuring the defendant Beyer's signature to the contract in question.   This determination will make necessary the consideration of some matters not dealt with in the former opinion (*ante,* p. 400, 230 N. W. 615) and will require a supplemental statement of the facts.

It should be said that the original agent, Cronce, had a right to return the goods in his possession at the termination of his contract and be credited with the list price therefor, or he might procure a new dealer satisfactory to the plaintiff and dispose of the goods directly to the new dealer, in which event the new dealer could pay him for the goods or, as was done in this case, the plaintiff might accept as its debtor the new dealer in lieu of Cronce, the retiring dealer. Negotiations were opened in this case about March 22, 1922. Cronce, the retiring dealer, inclosed an application blank signed by Menning along with a letter in which he said:

"I have decided to sell my Watkins business to Robert Menning of Mattoon, Wis., providing he can get his bondsmen and furnish you, the Watkins Company, with a satisfactory contract."

It appears that the application blank which Cronce inclosed was not filled out, but prior thereto Menning had sent one directly to the company.

There was further correspondence in which the plaintiff endeavored to persuade Cronce to continue the business. On April 26, 1922, Cronce wrote in part as follows: "I have decided to sell my Watkins business and I have picked you a good man to take my place."

Under date of May 5, 1922, plaintiff wrote Cronce as follows:

"Understanding that you and Mr. Robert Menning have made mutually satisfactory arrangements in regard to taking over your interests in the locality where you have been selling, we are today sending him a contract describing that locality.

"If his contract proves satisfactory, we would prefer that a cash arrangement be made for your interests, including unsold goods, etc., and in such case the transaction would be entirely between yourselves. As an accommodation, however, in case Mr. Menning wishes these goods charged to his account and you arrange with him to transfer them instead of returning them according to your agreement, we attach a special blank upon which you and he may invoice the goods he wishes to take over, then sign it, having your signatures witnessed, in the manner provided.

"On receipt of this blank properly filled out in all respects and after our acceptance of Mr. Menning's contract, we will credit the goods at wholesale prices to your account and charge his account. This transfer of course cannot become effective until after formal acceptance of Mr. Menning's contract, and you would not be warranted in turning the goods over to him until that time. The balance due us, if any, we will expect you to arrange to pay promptly.

"If your wagon is one which was originally purchased from us and your man wishes to charge it to his account, we will be willing to transfer that also at a price mutually agreed upon between you and him, not to exceed the original cost and on condition that his sureties execute a memorandum authorizing such a transfer."

Under date of May 5, 1922, Cronce and Menning made an itemized statement of the goods which Cronce had on hand on blanks furnished by plaintiff, which was signed by Cronce and Menning. According to this statement the

aggregate amount of the merchandise according to the wholesale price list was $1,187.78. Under date of May 5, 1922, the plaintiff company sent to Menning a contract duly executed by it, and asked him to execute the same and procure two sureties in accordance with the terms of the contract, which he proceeded to do. That guaranty was signed by Frank Gotz and Paul A. Janke. Menning commenced business under the contract, purchased goods and made payments, and on or about March 1, 1923, plaintiff prepared a new contract covering the period from March 26, 1923, to March 1, 1924. Menning signed the contract and sent the company a statement in which he acknowledged receipt of the contract of March 26, 1923, admitted that the contract showed the amount of indebtedness due from him to J. R. Watkins Company to be $1,794.90, and that he had carefully verified the same by his books. Apparently Menning had some difficulty in procuring guarantors under the new contract. The same was not completed until some time about May 15, 1923. The second contract was signed by the defendant Beyer and O. B. Wick as guarantors. The amount inserted in the second contract as constituting the past-due indebtedness is claimed by the plaintiff to be $1,794.90. Plaintiff contends that this amount was inserted in the contract prior to its execution by it and its receipt by Menning. The defendant Beyer claims that the amount was left blank both in the contract and in the guaranty and that Menning represented to him that he was just commencing business and did not owe the company anything. With respect to this contention, as has already been stated, the jury found in favor of the defendant Beyer. At the time of the trial both Menning and O. B. Wick were deceased.

Under date of May 18, 1923, the plaintiff wrote the defendant Beyer as follows:

"We are pleased to inform you that we have received and accepted the contract of Mr. Robert N. Menning, dated March 26, 1923, which you have signed as surety."

The plaintiff company had difficulty in procuring payments on the past-due indebtedness, and about July 7, 1923, terminated its contract with Menning and on that day wrote the defendant Beyer as follows: *"In re:* Your surety for Robt. Menning. Balance $1,798.11," and requested the defendant Beyer to assist them in procuring a settlement of the amount due. Upon the trial it was stipulated that the plaintiff had furnished goods under the new contract in the amount of $296.12, Menning had made payments of $440.22, leaving $144.10 to be applied on the goods purchased under the contract of May 5, 1922.

In a letter to Menning dated March 26, 1923, transmitting the contract in suit, the plaintiff stated:

"We inclose herewith your new contract expiring March 1, 1924, properly filled out and signed by us. When executing this contract sign it yourself in ink and obtain the signatures (in ink) of two sureties. (Directions as to execution not material here.)

"As you will note, we have inserted in the contract the amount of your indebtedness to us on March 26, 1923, namely, seventeen hundred ninety-four and 90-100 dollars, which amount is also inserted in the statement at the bottom of this sheet."

It is not claimed, however, that this letter was exhibited to either of the sureties who signed the contract of March 26, 1923. It is a noteworthy circumstance that although the plaintiff notified the defendant Beyer on July 7, 1923, of the state of the account and asked his assistance in procuring a settlement, it had no notice that the defendant Beyer claimed that there was any fraudulent misrepresentation until the answer in this case was served on April 6, 1927, almost four years afterward. This action was begun against the sureties to recover the amount due from Menning at the time the contract was terminated in July, 1923, being $1,670.80 with interest.

We have referred to the plaintiff without attempting to distinguish between the plaintiff as a Delaware corporation and a corporation of the same name organized under the laws of the state of Minnesota. Apparently the transfer of the business from one corporation to the other was made in December, 1922. This fact, however, is only material in relation to a matter which will be subsequently treated.

It becomes apparent that the sole basis of a claim that Menning, in procuring the signature of the defendant Beyer to the contract of March 26, 1923, was the agent of the plaintiff, is that the contract was sent to Menning by plaintiff, executed by the plaintiff, with the request that he execute the same and procure the signatures of two sureties, and that it recited a consideration of one dollar paid and received. Does the first party to a contract by sending a contract executed on its part to the second party to the contract, with the request that he execute it and procure sureties, thereby clothe the second party with apparent authority to make representations to the sureties as to the state of the account between the parties to the contract?

The general rule of law is that fraud practiced by the principal upon a surety without any knowledge or participation on the part of the obligee, by means of which fraud the surety is induced to sign the contract, does not affect the liability of the surety to the obligee. 50 Corp. Jur. p. 61, § 104 and cases there cited.

The sole authority to the contrary is *Dr. Koch M. T. Co. v. Poitras,* 36 N. Dak. 144, 161 N. W. 727, and a subsequent case which followed that case, *W. T. Raleigh Co. v. Warren,* 47 S. Dak. 319, 198 N. W. 555. The attempt to create an exception to the rule is based upon the fact that in *Dr. Koch M. T. Co. v. Poitras,* as in this case, the guaranty contained a recital that it was in consideration of one dollar paid by the obligee to the surety, the receipt

of which was acknowledged; that because of this it was a contract directly between the obligee and the surety, and that in procuring it the principal acted for the obligee rather than for himself as principal because the contract and guaranty included past-due indebtedness as well as any indebtedness which might accrue by reason of future advances. This is in our opinion an illusory distinction and based upon a false premise. As we have already pointed out, the plaintiff wrote a letter to the defendant Beyer accepting the contract of suretyship that would have completed the contract; advances were in fact made upon the contract and the time of payment of the past-due indebtedness was extended. Any one of these circumstances would have constituted sufficient consideration to make the contract enforceable. The fact that a dollar was paid in addition makes the contract no more enforceable than it would have been in the other instances set out. Nor does it in any respect change the essential character of the transaction. *Furst v. Risse* (S. Dak.) 229 N. W. 293. The plaintiff in this case had two guarantors for the indebtedness which existed at the termination of the first contract on March 26, 1923, and when it accepted the contract, performance of which was guaranteed by Beyer and Wick, in lieu of the prior contract, it did exactly what any creditor does when he consents to an extension of time of payment of an indebtedness, in consideration of the debtor procuring sureties, whether the transaction relates to commercial paper or an ordinary contract. Thus the fact that the consideration recited is one of any number of considerations which are ample to support the contract affords no basis for importing into the transaction apparent authority on the part of the principal to bind the obligee by statements made fraudulently to the surety in the absence of any knowledge or participation on the part of the obligee. The liability of a surety is not affected by the fact that the

consideration for the contract may take one of several forms or that it may or may not be recited in the instrument. The contractual obligation is the same in each case and the rights of the parties are the same. To say that one form clothes the principal with apparent authority to bind the obligee by statements made to the surety and the other does not, is saying that there is a distinction where there is no difference. To hold under the circumstances of this case Menning became an agent of the plaintiff with authority to bind it by statements made to Beyer would be not only contrary to the almost universal understanding of the business world but contrary to practically all of the authorities. *Wilkinson v. United States F. & G. Co.* 119 Wis. 226, 96 N. W. 560; *School Dist. No. 1 v. Dreutzer,* 51 Wis. 153, 6 N. W. 610; *Saginaw Medicine Co. v. Batey,* 179 Mich. 651, 146 N. W. 329; *J. R. Watkins Medicine Co. v. Hargett,* 209 Ala. 165, 95 South. 811; *Galbraith v. Shores-Mueller Co.* 178 Ky. 688, 199 S. W. 779; *Archbold v. W. T. Rawleigh Co.* 89 Ind. App. 337, 163 N. E. 538; *Sager v. W. T. Rawleigh Co.* 153 Va. 514, 150 S. E. 244; *W. T. Rawleigh Co. v. Brown,* 143 Miss. 895, 108 South. 720; *J. R. Watkins Co. v. Poag,* 154 Miss. 222, 122 South. 473; *J. R. Watkins Co. v. Montgomery,* 140 Ark. 487, 215 S. W. 639; *J. R. Watkins Co. v. Hunt,* 104 Neb. 266, 177 N. W. 462; *Watkins Medical Co. v. Lee* (Alberta), 52 D. L. R. 593.

In this connection it should be said that the supreme court of North Dakota has declined to follow the decision in the *Poitras Case* to its logical conclusion (see *J. R. Watkins Co. v. Keeney,* 52 N. Dak. 280, 201 N. W. 833), and restricts it to cases where the contract of guaranty recites a consideration as having been given by the obligee and received by the surety.

It is also urged that the court was in error in permitting the plaintiff to recover in this case because the transaction

was in violation of ch. 226, Wis. Stats., relating to transaction of business by foreign corporations. While there are some recitals in the documents and upon cross-examination, and some of the witnesses testified to legal conclusions which lend some support to that contention, it is undisputed in this case that title to the goods which were in the hands of Cronce, the retiring dealer, was in him; that he sold the goods to Menning; that he and Menning agreed upon the amount thereof and their value according to the wholesale price list; that instead of Menning paying Cronce as the plaintiff suggested he should do, it was agreed that the plaintiff should accept Menning as its debtor in lieu of Cronce. There is no circumstance in the case as exhibited by the transaction as it actually took place that affords any basis for the claim that the title to the goods sold by Cronce to Menning passed through the plaintiff company. The sale was made by Cronce, delivery was made by him, ascertainment of the amount due was fixed by agreement between Cronce and Menning, and the plaintiff merely consented to a novation by the terms of which it accepted Menning as its debtor in lieu of Cronce. Such a transaction does not fall within the condemnation of the statute.

It is also urged that there was no assignment from the J. R. Watkins Company, a Minnesota corporation, to the J. R. Watkins Company, a Delaware corporation. We shall not attempt to make a detailed statement of all the matters brought out upon the trial in relation to this branch of the case. It appears without dispute that the J. R. Watkins Company, a Delaware corporation, after January 1, 1923, assumed to and did perform the contract of the J. R. Watkins Company, the Minnesota corporation. When the time came for a renewal, the J. R. Watkins Company, Delaware corporation, which in the meantime had become owner of all of the stock of the J. R. Watkins Company, Minnesota cor-

poration, except qualifying shares, requested Menning to enter into a new arrangement by which he agreed to pay to it, J. R. Watkins Company, Delaware corporation, the whole amount due upon the 1922 contract, to which proposition Menning assented. After he had signified his acceptance by the execution of the contract, the sureties guaranteed performance of that contract. Certainly they are in no position now to raise any question in the case, under these circumstances, that Menning himself could not raise. Menning having entered into a valid contract upon a sufficient consideration to pay the whole amount, he could not repudiate it upon the ground that there was no formal assignment, assuming there was none, from the J. R. Watkins Company, Minnesota corporation, to J. R. Watkins Company, a Delaware corporation.

*By the Court.*—The mandate heretofore entered in this case is vacated and set aside and the judgment appealed from is affirmed.

FOWLER, J. (*on reargument*). I dissent from the disposition of the case made upon motion for rehearing and adhere to the opinion originally expressed. It is manifest that the dominant purpose of the company in getting the guaranty in suit was to secure payment of the whole of the $1,690 then owing by Menning to the company which the company considered would never be paid otherwise. As I construe the transactions, this debt included the $1,187 debt of Cronce assumed by Menning which was not covered by the guaranty of Menning's original contract. Menning had not only not paid anything on this debt but had run in debt $500 more for goods purchased during the term of his first contract. He had demonstrated his unreliability and irresponsibility, and the company evidently considered this whole indebtedness uncollectible however it might be as to the $500. It was

for the company's very great advantage and benefit to get this whole indebtedness guaranteed. The corporation in getting the guaranty could only act through an agent. It saw fit to have Menning act for it in that behalf and made him its agent for that purpose. The recital in the guaranty of a one-dollar consideration paid by the company to the guarantor and received by the guarantor, while the one dollar is of no great intrinsic import in itself, stamps the contract of guaranty as negotiated directly between the company and guarantor for the company's benefit and as procured at the company's solicitation and of necessity by its agent. And it may properly be said in this connection that the one dollar, small as it is as a consideration, is fully as great and as valuable as the extension of time granted to Menning for payment of his $1,690 debt relied on as consideration for the guaranty of the payment of that debt. A distinction may properly be and in the interest of honesty and fair dealing should be made between the situation here involved and the common one where a dealer requires a prospective purchaser to procure a guarantor of his account before he will sell him goods, or a banker requires a prospective borrower to procure a surety before he will loan him money or renew the note of a solvent maker whose existing note is collectible. It is in cases such as these that the principle stated in the majority opinion was laid down and to cases such as these that it is properly applied. To apply the principle of the original decision to the case of a dealer who after selling goods on credit ascertains that the purchaser is wholly insolvent and contemplating bankruptcy or the like, in his own interest and for his own benefit gets the purchaser to procure a guarantor of payment of his debt, would not topple over the business world or injure any business conducted on the honest and generally practiced principle of giving fair value for value received. One who purchases an indemnity contract from another in the business of furnishing

such contracts and pays for it a consideration commensurate with the risk assumed avoids being in the position of ratifying and seeking to profit by frauds practiced in securing the contract on which he relies. If we assume that the plaintiff company in getting the guaranty was entirely free of intent to overreach or get something for nothing, yet here, if ever, is place to apply the equitable rule that when one of two innocent persons must suffer from the wrong of another, that one should suffer who put it in the power of the wrongdoer to do the wrong. The assumption stated would be a violent one in view of the fact that although Menning's new contract was ostensibly to run a year and his payments after its acceptance uniformly exceeded his purchases, while under the old contract they had uniformly been less, the company terminated the new contract in seven weeks after the guaranty was accepted. This speedy termination of the contract clearly evidences the dominant purpose of the company in getting the guaranty as first stated herein. It indicates moreover that the purpose in exacting a new contract from Menning was that it might be used to get his old and worthless debt guaranteed, and discloses the shallowness and hypocrisy of the plaintiff's claim that the professed extension of time to Menning for payment of his debt operated as a valuable consideration to support the guaranty of its payment. It is quite apparent that the plaintiff company set a trap to catch an unwary guarantor. It should not be regarded as innocent of the fraud of Menning found by the jury. Judgment should be entered upon the verdict dismissing the complaint as directed by the original mandate.

A motion for a rehearing was denied, with $25 costs, on February 10, 1931.