[Civ. No. 13961.   Second Dist., Div. Three.   July 23, 1943.]

C. LEROY CRUMRINE, as Administrator, etc., Appellant,
v. HASAN DIZDAR, Respondent.

Arthur H. Blanchard and Burton B. Crane for Appellant.

Albert A. Kidder, Jr., and James C. Hollingsworth for Respondent.

WOOD (Parker), J.—Frank C. Arnold was appointed administrator of the estate of Charles Trotter upon condition that he furnish a $1,000 bond. Arnold presented a bond in that amount to the court, signed by himself as principal, and by William T. Fulton and defendant as sureties, which bond was approved by the court. Letters of administration were issued to Arnold on March 11, 1926. Arnold died on December 31, 1939, and at that time the administration proceedings in the Trotter estate had not been completed and no account had been rendered.

The public administrator was appointed administrator of Arnold's estate, and he rendered an account of Arnold's administration of the Trotter estate showing that Arnold was indebted to the Trotter estate in the sum of $1,285.45. The court in settling the account of Arnold as administrator adjudged there was a balance of $1,285.45 due from Arnold to the Trotter estate, and that said balance "was not on hand" by Arnold at the time of his death.

Plaintiff, who succeeded Arnold as administrator of the Trotter estate, brought this action against defendant, as

surety, to recover the amount of the bond. Fulton, the other surety, died in 1936.

In his answer defendant denied generally the allegations of the complaint, and alleged fraud on the part of his co-surety and Arnold in obtaining defendant's signature as a surety. As further defenses, he alleged: (1) Laches, in that plaintiff was "appointed administrator on June 19, 1940, and did not commence this action until July 24, 1941; in that plaintiff was a nephew of Trotter and should have known of the defaults of Arnold as they occurred; and in that plaintiff did not file any claim against the estates of either Arnold or Fulton, and by his failure to do so has deprived defendant of the right of contribution and is barred from invoking the aid of equity. (2) The action was barred by the statute of limitations. (3) The action was premature in that the Arnold estate had not been closed and no demand had been made upon the administrator of Arnold's estate. (4) Defendant did not make the bond. (5) Failure of consideration. (6) Arnold was granted extensions of time by plaintiff and by those whom plaintiff represents.

Defendant testified in substance as follows: He was born in Jugoslavia, came to the United States in 1906, attended night school 1½ years, could read about 15 words out of each 100, and became a citizen in 1912. Preceding 1920 he was a railroad laborer, a truck driver, and a cement worker. Since 1920 he has owned and operated a cafe in Camarillo, and has built and sold houses. At the time he signed the bond he owned said cafe, the water system in Camarillo, an old church building and a few homes. On the day he signed the bond, Arnold (the principal) and Fulton (the co-surety) came to his cafe and Fulton, in Arnold's presence, told defendant that a relative of Arnold had died leaving an old house in Fillmore which Arnold had an opportunity to sell for $1,700, and the court was going to appoint Arnold to sell it. Fulton then asked defendant if he "wanted to go with him" and "sign the bill" for Arnold, and said "Frank [Arnold] is all right," that it would be settled up "in 6 or 7 months." Defendant had worked with Arnold for several years. Defendant often went to Fulton for advice, and relied upon his statements. After defendant signed the bond he, Arnold and Fulton went to a notary public, whom defendant had known 6 or 7 years, and

Fulton and defendant again signed the bond before the notary. No one read the bond to defendant.

A bookkeeper, called by defendant, testified he had known defendant 20 years, and had been employed by him 3 or 4 years; and that defendant could read some printing but no "written" matter. A justice of the peace, called by defendant, testified he had known defendant 26 years; that defendant could not read, and that he (the witness) often read and explained documents to defendant.

The evidence presented by plaintiff consisted of plaintiff's testimony concerning his appointment as administrator of the Trotter estate; the testimony of defendant under the provisions of section 2055 of the Code of Civil Procedure; and the decree showing the indebtedness of Arnold, the bond, and other documents showing the essential probate proceedings.

Judgment, based upon a verdict, was in favor of defendant. Plaintiff appeals from the judgment and the order denying a new trial. Plaintiff contends, among other things, that fraud practiced by a co-surety or an administrator upon a surety whereby the surety was induced to sign the administrator's bond does not constitute a defense to an action upon the bond brought in behalf of the heirs, and therefore certain instructions of the court were prejudicially erroneous.

One of the instructions given at defendant's request was: "You are instructed that where there is fraud or misrepresentation by one person likely to cause and that does cause another person, without negligence on his part, to believe that he is assenting to a transaction entirely different from that which would be created if there was no fraud, misrepresentation or mistake as to the facts, then I instruct you that there has been no assent or meeting of the minds required by law, and if you further believe from all the facts and circumstances in this case that the said defendant Hasan Dizdar signed said bond or. contract by reason of fraud or misrepresentation which was likely to cause and did cause him to sign the same, and that there was no negligence on his part in signing said bond or contract, and that in so signing it, he believed that he was signing a bond or contract entirely different from that which would have been signed if there had been no fraud, misrepresentation or mistake as to the facts, then I instruct you that your verdict must be in favor of the

defendant, Hasan Dizdar, and against the plaintiff, C. LeRoy Crumrine, as Administrator of the Estate of Charles Trotter, Deceased.''

Another instruction given at defendant's request was to the effect that if the jury believed defendant did not have sufficient education to read the bond, and that the terms thereof were misrepresented to defendant and the misrepresentation was relied upon by him its verdict must be in favor of defendant.

Another instruction given at defendant's request was to the effect that if the jury believed defendant did not have sufficient education to read the bond, although he was under the legal duty to have it read to him, he was justified in relying upon the statements or representations of one in whom he had confidence.

Another instruction given at defendant's request stated that if the jury believed Arnold [the principal] was present, and had reason to know of the said misrepresentations at the time the same were alleged to have been made, defendant was not liable.

Further instructions given at the request of defendant were, in substance: (1) that while one is presumed to have assented to the terms of a written contract when he signs it, it may be rebutted, and if defendant did not assent to the terms of the bond, ''then in law'' he is not deemed to have signed or executed said bond; (2) that a contract obtained by misrepresentation is of no legal force or effect; and (3) that the jury's verdict should take into consideration the circumstances surrounding the execution of the bond and the situation of the parties.

If the persons in whose interest the surety's liability is sought to be enforced did not have knowledge of any fraud in obtaining an administrator's bond at the time it was obtained, and if the administrator's liability has been fixed by a decree, the defenses available to a surety in an action upon the bond are: that the bond was not made; or that the decree, ordering the administrator to deliver property for which he was accountable, was obeyed; or that the decree was not made; or that the decree, if made, was obtained by fraud. In the case of *Irwin* v. *Backus*, (1864) 25 Cal. 214 [85 Am.Dec. 125], the court found that Backus, the administrator, was in default, removed him from office, appointed a successor and

ordered Backus to pay over the amount due the estate. Backus did not comply with the order. In holding the sureties liable on the bond, the Supreme Court said, at page 223: "As a general rule, sureties upon official bonds are not concluded by a decree . . . against their principal . . . but administration bonds seem to form an exception to this general rule. . . . This distinction seems to be founded upon the terms of the obligation into which the sureties upon an administration bond enter, which are that their principal shall faithfully perform all the duties imposed upon him by the nature of his trust, and will account for and pay over all money which may come into his hands pursuant to the orders and decrees of the Probate Court," and said further on page 224: ". . . upon the refusal of the administrator to obey such order or decree, the liability of the sureties attaches, and they are bound to make good the default of their principal, and cannot go behind the decree to inquire into the merits. They may show in defense either that the bond was not made, or that the decree was not made; or, if made, that the same has been obeyed; or that the same was obtained by fraud or collusion; but they cannot show that the Court has erred in making the decree. . . ." It is to be noted that the words, "the same has been obeyed," in the last sentence above quoted referred to the decree. The word "obeyed," of course, was not used with reference to the bond, and the words "the same," therefore, referred to the decree. It is to be noted further that the words, "or that the same was obtained by fraud or collusion," also referred to the decree. The repetition of the words "the same" indicates a reference to the same subject that was referred to when those words were used in the preceding sentence. ▮ The word "collusion" is not used ordinarily in referring to the improper obtaining of a surety's signature, but is an appropriate word to use in designating connivance between a principal and a beneficiary in a court proceeding to obtain a decree against a surety. Authorities hereinafter mentioned also indicate that the words "the same," as used in *Irwin* v. *Backus, supra,* related to the decree and not to the bond. ▮ It is stated in 11B California Jurisprudence, section 1405, pages 942 and 943: "The sureties may show, by way of defense, either that the bond was not *executed* or that the decree directing delivery of property found in the hands of their principal was not *made,* or, if made, that *it* [the decree] has been obeyed or was obtained by fraud or collu-

sion; but they may not show that the court erred in making the decree. . . ." (Italics added.)

"As a general rule, in the United States, when a principal obligor has induced his surety or guarantor to sign an instrument by false or fraudulent representations, such misrepresentations may not be set up by the surety or guarantor as a defense to an action on the indorsement or guaranty unless the obligee or guarantee had notice of, or participated in, such fraud." (71 A.L.R. 1278, and cases cited.)

In 34 Corpus Juris Secundum, section 944d, page 1166, it was stated: "The liability of the sureties on an administration bond is not affected by the fact that they were induced to sign the bond through the fraud or misrepresentation of the principal, of which the beneficiaries of the estate in whose interest the liability is sought to be enforced are innocent. . . ."

The court stated in the case of *Simon Newman Co.* v. *Tully,* (1939) 13 Cal.2d 134, 137 [88 P.2d 131]: "The rule is well settled and generally followed that fraud of the principal debtor will not relieve the guarantor or surety who acted at the request of the debtor from liability, if the creditor did not have notice of the fraud and did not participate therein."

It was stated in *California Standard F. Corp.* v. *Cornelius Cole, Ltd.,* (1935) 9 Cal.App.2d 573 [50 P.2d 1054], at page 577: " 'While the law requires the guarantee to act in good faith, unless he has knowledge of or participates therein, he is not responsible for any misrepresentation or deception practiced by the principal, or other third person, upon the guarantor in order to induce him to enter into the contract of guaranty.' 28 C.J. 927; *Elizalde* v. *Murphy,* 163 Cal. 681 [126 P. 978].)"

In the case of *Scholl* v. *Gilman,* (1928) 263 Mass. 295 [160 N.E. 889], the court said at page 299: "It is not material what induced the defendant to sign the bonds, so long as the obligee was not responsible therefor."

■ If a surety has signed an administrator's bond, and has undertaken thereby to pay any balance which shall be adjudged to be due by the administrator to the estate, he is bound by the judgment unless he can show the judgment was obtained by fraud. (*Easton* v. *Boston Investment Co.,* (1921) 51 Cal.App. 246, 251, 252 [196 P. 796]; *Kruger* v. *California Highway Indem. Exch.,* (1927) 201 Cal. 672, 678 [258 P. 602].)

Plaintiff cites the case of *Treweek* v. *Howard,* (1895) 105 Cal. 434 [39 P. 20], in support of his contention that fraud by the administrator or co-surety in obtaining the signature of defendant surety was not a defense. The sureties therein were held liable. One of the defenses alleged therein was that the executor, by fraudulent statements, induced defendants to sign his bond as sureties. Defendant asserts there is no similarity between that case and the present one in that the fraud referred to therein was not the type of fraud under discussion herein. The case, however, is of assistance in determining whether the fraud which is referred to in *Irwin* v. *Backus, supra,* as a defense, is fraud in obtaining the bond or fraud in obtaining the decree. The court said in the *Treweek* case at page 445: "The decree of distribution . . . and the order . . . approving the account of the executor, were, in the absence of fraud, binding upon the . . . sureties. . . ." In support of that statement the court cited the case of *Irwin* v. *Backus, supra,* and then said on the same page: "The question remains, Is there any such fraud charged . . . as entitled the defendants here to attack the *decree* of distribution. . . ." (Italics added.) It therefore appears that the court eliminated, as a question in the case, the alleged fraud in obtaining the signatures of the sureties on the bond; and it further appears that the fraud referred to in the statement of the court, "in the absence of fraud," in the *Treweek* case was fraud in obtaining the *decree,* and that the court in that case interpreted the reference to fraud, as a defense in the *Irwin* v. *Backus* case, to mean fraud in obtaining the *decree.*

■ The first instruction above referred to included a statement that if there was fraud and "there was no negligence on his [defendant's] part in signing said bond" the verdict must be for defendant. Defendant contended as a part of his defense that he was not negligent in signing the bond. As to the question of negligence on the part of a surety in signing a bond, it was said in the case of *Sager* v. *W. T. Rawleigh Co.,* (1929) 153 Va. 514, 529 [150 S.E. 244, 66 A.L.R. 305], after referring to various cases: "These cases and the majority rule do not rest upon negligence but upon a broader base. It comes back to this: 'Where one of two innocent parties must suffer by a fraud perpetrated by another, the law imposes the loss upon the party who, by his misplaced confidence, has enabled the fraud to be committed.' " In that case the defendant, a successful business man,

could not read, but could write his name, and he signed a guaranty upon the representation of the principal that it was a letter of recommendation. The court held the defendant liable, and stated further at page 526: ". . . . we are of opinion that as between plaintiff and defendant, the equities are with the plaintiff. It [Rawleigh Co.] did nothing, while the defendant [Sager] set in motion a series of causes, innocent though he may have been, which resulted in loss to another who had every reason to rely and did rely upon them. The weight of authority in this country and the juster rule hold with the plaintiff. . . . Common prudence requires that those who are unable to read should at least not sign contracts or writings without having them first read by some disinterested party.''

In the case of *J. R. Watkins Medicine Co.* v. *Hargett,* (1923) 209 Ala. 165 [95 So. 811], an obligor had induced certain persons to sign a guaranty by a false representation that the instrument was a recommendation, and the court held that the fraud did not defeat the liability of the guarantors to a guarantee who did not participate in the obligor's fraud, and stated at page 166: "The real question is: Which of two innocent parties shall suffer by a fraud perpetrated by another? The answer is found in the principle of justice and morals, often followed by this court, which imposes the loss upon the party who, by his misplaced confidence, has enabled another to commit the fraud.''

Defendant relies strongly upon the case of *Mazuran* v. *Stefanich,* (1928) 95 Cal.App. 327 [272 P. 772]. That action was upon a note made by defendants and payable to plaintiff, an attorney at law, in consideration of plaintiff's agreement to render certain legal services. The court held that the note was obtained by fraud and was void. That case (in which a confidential relationship of attorney and client existed) is distinguishable from the present case in that plaintiff therein was guilty of fraud in obtaining the note. The note was invalid *as between the parties to the transaction.* In the present case the heirs of Trotter, for whose protection the bond herein was required by law, did not participate in or have knowledge of the alleged fraud of defendant's co-surety and the administrator in obtaining the bond. The heirs were not parties to the transaction in which the bond was obtained and did not determine the sufficiency of the

sureties. The bond and the sufficiency of the sureties were approved by the court.

The instructions above mentioned relative to fraud as a defense were prejudicially erroneous.

█ The action was not barred by the statute of limitations. The period of limitation for commencing the action against the surety was at least four years from the time Arnold, the former administrator, died on December 31, 1939. (*Hewlett* v. *Beede,* (1905) 2 Cal.App. 561, 567 [83 P. 1086].) The action was commenced on July 24, 1941.

█ Plaintiff was not guilty of laches. An administrator or surety who asserts that an action against him on his bond is barred by laches or equitable estoppel must show an unreasonable and unexplained delay, and it has been held that mere delay short of the full period of limitation will not defeat an action on the bond. (*Tucker* v. *Stewart,* (1910) 147 Iowa 294 [126 N.W. 183].) In the case of *Biggins* v. *Raisch,* (1895) 107 Cal. 210 [40 P. 333], the executor and one of the sureties had died, and plaintiff was appointed administrator with the will annexed. He commenced an action against the remaining sureties within 8½ months after the death of the executor, and the court said, at page 213: ''Surely no laches can be attributed to them . . . this being only a reasonable time within which to procure the appointment of the administrator, examine the condition of the estate, and commence the action. . . . While it is true that they [heirs] might have compelled the executor to account to the probate court long before he died, yet merely passive delay and forbearance on their part could not discharge the sureties nor affect their obligation. . . .'' Approximately 19 months elapsed from the time of Arnold's death on December 31, 1939, to the time the action was commenced on July 24, 1941. Plaintiff was appointed administrator of the Trotter estate on June 19, 1940, to succeed Arnold. The decree settling Arnold's account as administrator, and fixing the amount due from Arnold to the Trotter estate was made on April 14, 1941. In view of the several legal proceedings and investigations which were necessary before commencing the action, including the appointment of an administrator to succeed Arnold, the appointment of an administrator of Arnold's estate, the preparation of an account by Arnold's administrator covering the many years of his administration of the Trotter estate, and the settlement of the account by the court, it should not be concluded there was a delay that amounted to laches.

It is not necessary to discuss other points presented by appellant.

The judgment is reversed. The order denying a motion for a new trial is not an appealable order, and the appeal therefrom is dismissed.

Desmond, P. J., and Shinn, J., concurred.