## STANDARD SURETY & CASUALTY CO. OF NEW YORK v. OLSON.

### No. 13006.

Circuit Court of Appeals, Eighth Circuit.

July 12, 1945.

386

Charles E. Carlson, of Minneapolis, Minn. (Eloi Bauers, of Minneapolis, Minn., on the brief), for appellant.

Ray E. Cummins, of St. Paul, Minn. (R. W. Allard, of Minneapolis, Minn., on the brief), for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a judgment for the defendant (appellee) entered upon the verdict of a jury in an action upon an indemnity agreement signed by him. The action was brought to recover a loss sustained by the plaintiff (appellant) under a contractor's bond which it had issued in reliance upon the indemnity agreement. The main defense was that the defendant, Hans Olson, had been fraudulently induced by the contractor to sign the indemnity agreement. The plaintiff contends that, under the evidence and the applicable law, which is that of Minnesota, the judgment should have been for it and that the court erred in failing to direct a verdict in its favor.

The factual situation out of which this controversy arises is, in substance, as follows: The Community Lumber Co., Inc. (which will be called the contractor), in April, 1941, contracted with the De Ponti Aviation Corporation to construct certain hangars in the city of Minneapolis, Minnesota. The contractor was required to give a bond for the faithful performance of the contract. Through an insurance broker, application was made to the plaintiff for such a bond. The branch manager of the plaintiff in Minneapolis refused to issue the bond without indemnity. The broker procured from the contractor and delivered to the plaintiff an agreement signed by the defendant, by the terms of which the defendant undertook to indemnify the plaintiff against all loss which it might sustain in consequence of executing a bond for the contractor. The bond was issued in reliance upon the agreement. The plaintiff, however, at the time it issued the bond, supposed that the signature upon the indemnity agreement was that of a different and a more financially responsible Hans Olson. The contractor defaulted in the performance of its contract, and the plaintiff, under its bond, was obliged to pay for the completion of the work. It brought this action to recover the loss from the defendant, jurisdiction being based on diversity of citizenship.

In his answer, the defendant denied the execution of the indemnity agreement, but alleged that if he signed it his signature was procured through the fraud of C. M. Crane, the president of the contractor. The defendant's testimony upon the trial was to the effect that Crane misled him into believing that the indemnity agreement was an affidavit which the plaintiff had de-

manded and the purpose of which was to show that the defendant had advanced $2,-.000 to Crane and was to have a one-third interest in the business of the contractor.

The plaintiff's evidence tended to show that the defendant knew what he was signing. For the purposes of this opinion, we shall assume that the defendant's signature was procured by the fraud of Crane, and that the defendant was not negligent in signing the indemnity agreement. Under the charge of the court, that is, in effect, what the jury found by its verdict.

The evidence conclusively showed (1) that the plaintiff relied upon the indemnity agreement in executing its bond; (2) that the plaintiff had nothing to do with procuring the defendant's signature to the indemnity agreement; and (3) that the plaintiff had sustained the loss for which recovery was sought. The court, in substance, so instructed the jury, but advised them that if they found that Crane had fraudulently induced the defendant to sign the agreement and that the defendant was not negligent in signing it without reading it, their verdict should be in his favor.

If the plaintiff had been a party to the fraud which induced the defendant to sign the indemnity agreement, the fraud would have been a complete defense to this action, without regard to the question of negligence.[1] The plaintiff, however, did nothing to induce the defendant to sign the indemnity agreement, and had no notice or knowledge that his signature had been procured by fraud. The prevailing rule in this country applicable in situations comparable to this is stated in the Annotation to J. R. Watkins Co. v. Beyer, 71 A.L.R. 1268, 1278, as follows: "As a general rule in the United States, when a principal obligor has induced his surety or guarantor to sign an instrument by false or fraudulent representations, such misrepresentations may not be set up by the surety or guarantor as a defense to an action on the indorsement or guaranty unless the obligee or guarantee had notice of, or participated in, such fraud."

The author of the annotation cites, in support of this rule, three Minnesota cases: W. T. Rawleigh Co. v. Hoffman, 1925, 162 Minn. 57, 202 N.W. 54; National Surety Co. v. Becklund, 1926, 169 Minn. 177, 210 N.W. 882; Schlozer v. Heckeroth, 1928, 174 Minn. 525, 219 N.W. 921. In the last of these cases, the Supreme Court of Minnesota said (page 527 of 174 Minn., page 922 of 219 N.W.): "* * * it is well settled that false representations made by or on behalf of the principal obligor or debtor to induce others to guarantee payment of his obligation are not imputable to the obligee, he having no part in procuring the execution of the guaranty. This question was fully considered and determined in two late cases. W. T. Rawleigh Co. v. Hoffman, 162 Minn. 57, 202 N.W. 54; National Sur. Co. v. Becklund, 169 Minn. 177, 210 N.W. 882. Other cases to same effect are cited in Ann.Cas.1916A, note at page 505."

This settled rule of Minnesota is, we think, applicable to the instant case. The fraud of Crane in procuring the defendant's signature can not be imputed to the plaintiff nor can it be used as a defense to this action.[2] See, also Neefus v. Neefus, 209 Minn. 495, 498, 296 N.W. 579; Sager v. W. T. Rawleigh Co., 153 Va. 514, 150 S.E. 244, 66 A.L.R. 305, and Annotation, pages 312–317. While there are distinctions between contracts of guaranty, of suretyship, and of indemnity, the undertaking of an indemnitor, like that of a guarantor or a surety, is that he shall be answerable for the default of another.

It is not conceivable to us that the fact that the plaintiff accepted the indemnity agreement in the belief that it was signed by a different Hans Olson is of any help to the defendant. The record does not indicate that the question of the effect of this misunderstanding was raised or ruled upon at the trial, and only scant reference

---

[1] Eggleston v. Advance Thresher Co., 96 Minn. 241, 246, 247, 104 N.W. 891; National Cash Register Co. v. Merrigan, 148 Minn. 270, 271, 181 N.W. 585; C. Gotzian & Co. v. Truszinski, 169 Minn. 199, 203, 204, 210 N.W. 880. Compare, Minneapolis Brewing Co. v. Grathen, 111 Minn. 265, 126 N.W. 827.

[2] If this action had been upon a promissory note of which the plaintiff was an innocent holder, the defense asserted would have been available under a Minnesota statute. See M. & M. Securities Co. v. Dirnberger, 190 Minn. 57, 250 N.W. 801. If the action had been upon a mortgage of which the plaintiff was an innocent assignee, the defense would also have been available, for the reason that in Minnesota the assignee of a mortgage acquires no greater rights than those of the mortgagee. Paulsen v. Koon, 85 Minn. 240, 88 N.W. 760.

is made to it in the defendant's brief. The defendant's argument is that there was no meeting of the minds, because "Hans Olson never intended to contract in any way with the bonding company. He merely intended to give them an affidavit." But the right of the plaintiff to recover in this case does not depend upon a meeting of the minds of the parties. The plaintiff is entitled to recover for the reason that its loss is legally attributable to the act of the defendant in signing the indemnity agreement. Equity will not permit the defendant to assert that the agreement which he signed and upon which the plaintiff justifiably relied, to its damage, was a nullity.[3]

The judgment appealed from is reversed, and the case is remanded to the court below with directions to enter judgment in favor of the plaintiff for the amount due it under the indemnity agreement.

WOODROUGH, Circuit Judge (dissenting).

The Hans Olson who was sued for an indemnity in this case is a carpenter who works with his hands at that trade for other people, but the indemnity agreement on which the suit was brought was taken by the surety company on the representation that the indemnitor therein was the Hans Olson who is vice president of the Lake Street Sash & Door Company and worth in excess of $50,000. According to the testimony of the carpenter Hans Olson, he was tricked into affixing his signature to the indemnity agreement by a switching of papers, an affidavit being read out to him and the signature blank of the indemnity being laid down for him to write his name on. On the jury's finding that the carpenter Olson was not negligent, it has seemed to me that the judgment for him is sustainable. There was no meeting of minds to constitute a contract, in that he did not intend to contract with the surety company and it did not intend to contract with him. Nor did carpenter Olson's signature afford opportunity in the ordinary sense to induce the surety company's reliance on the responsibility of Vice President Olson. Hardly more than handing a man a dollar bill affords him opportunity to raise it and pass it for a ten. The company seems rather in the position of having had a forged document which evidenced no contract,

uttered to it. Having no contract, it can have a remedy only in tort. On the jury's finding that the carpenter Hans Olson was not negligent (and hence committed no tort), anything the company may get from him would seem to be in the nature of a windfall to it—something neither contracted for nor accrued from any legally cognizable injury done to it by the carpenter.

I think the Minnesota statutory public policy of exempting the apparent maker of a negotiable note under like circumstances ought a fortiori to apply to save the carpenter here.

3 See Sager v. W. T. Rawleigh Co., 153 Va. 514, 150 S.E. 244, 66 A.L.R. 305, and Annotation, pages 312–317; and J. R. Watkins Co. v. Beyer, 203 Wis. 397, 230 N.W. 615, 233 N.W. 442, 71 A.L.R. 1268, and Annotation, pages 1278–1287.