ARCHBOLD ET AL. *v.* W. T. RAWLEIGH COMPANY ET AL.

[No. 13,143.   Filed November 1, 1928.   Rehearing denied February 23, 1929.   Transfer denied May 15, 1929.]

*W. H. Eichhorn, Frank W. Gordon* and *John H. Edris,* for appellants.

*E. C. Vaughn* and *John F. Decker,* for appellees.

NICHOLS, C. J.—Action by appellee Rawleigh company, in one paragraph of amended complaint, against appellants and appellee Fonner for the recovery of a contract of guaranty executed by appellants and appellee Fonner. It is averred in the complaint that on January 13, 1922, in consideration that appellee would sell to one J. C. Archbold certain goods on credit, appellants and appellee Fonner executed a written agreement whereby they jointly and severally guaranteed the payment to appellee company, mentioned hereinafter as "appellee," any balance due to it from said Archbold at the time said contract was accepted by appellee January 13, 1922, and agreeing further therein that the written acknowledgment by said buyer should in all

respects bind and be conclusive, jointly or severally, against them, a copy of which is attached to the complaint and made a part thereof; that appellee, relying on said contract of guaranty, thereafter sold and delivered to said Archbold goods and merchandise of the value of more than $1,838.60, for which he did not pay in full, and that there is a balance due for the same, of $1,057.12 which is due and unpaid. The contract is made a part of the complaint, and recites: "the W. T. Rawleigh Company, an Illinois corporation, hereinafter called 'the seller,' and J. C. Archbold of Decatur, in the State of Indiana, hereinafter called 'the buyer'" and "Whereas said buyer desires to purchase of the seller, at wholesale, such of its manufactured products as the seller shall hereafter determine to sell to the said buyer," and "the seller agrees to sell and deliver to the buyer F. O. B. Freeport, Illinois . . . at current wholesale prices," and "the buyer agrees to pay said seller the invoice price for all products so purchased under this agreement, also any balance due the seller at the date of the acceptance of this renewal contract." And so on throughout the contract, appellee is mentioned as the seller and Archbold as the buyer. Appellants' guaranty, so far as we need to set it out, reads that: "For and in consideration of the sum of $1 to me in hand paid, the receipt of which is hereby expressly confessed and acknowledged, or in consideration of the above named seller extending further credit to the said buyer, we, the undersigned, do hereby jointly and severally guarantee unto said W. T. Rawleigh Company, the above named seller, unconditionally, the payment in full of the balance due or owing said seller on account, as shown by its books at the date of the acceptance of this contract of guaranty by the seller, and the full and complete payment of all moneys due or owing, or that may become due or owing said seller, and all indebtedness incurred by the buyer

under the terms of the above and foregoing instrument by the buyer."

There were six paragraphs of answer, of which the first, second and fifth were withdrawn, leaving for our consideration the third, fourth and sixth paragraphs. It is averred in the third paragraph that, on January 13, 1922, and for a long time prior thereto, Archbold purchased from appellee goods of the kind and nature set out in the complaint. That, as such purchaser, it was understood and agreed that he was to sell in and about the city of Decatur, and in and through Adams county, and in some territory adjacent thereto, goods manufactured by appellee, and that he did sell all the said goods in and about said territory, of the value of $1,635.34; that, on January 13, 1922, he was indebted to appellee in the sum of $1,635.34; that appellee, desiring security on said past due indebtedness, at said time, ordered and directed Archbold to procure for it a contract of guaranty, guaranteeing the payment of said past due indebtedness, and forwarded to J. C. Archbold the blank form of contract of guaranty which, when executed, became the contract sued upon; that, acting under said orders and directions solely, Archbold procured the signatures of appellants to the contract of guaranty sued upon; that, at the time of the execution of the said instrument as such agent, as above alleged, Archbold represented to appellants that at said time there was no indebtedness existing between appellee and said Archbold, and that all moneys for goods, if any whatever, owing by him to appellee, had been fully paid, and there was no indebtedness of any kind whatever; that, relying upon and believing said statement of said agent, appellants attached their signatures to said guaranty for the reasons herein set out, and for those only; that, notwithstanding said representations, the indebtedness of $1,635.34 was then due and unpaid, all of which was known to said agent at

the time of making said statements and representations aforesaid; that, by reason of the said statements and representations herein averred, appellants are not liable to appellee for said existing indebtedness alleged by appellee to be due, prior to the execution of the instrument sued on, and appellants ask judgment.

The fourth and sixth paragraphs of answer are similar to the third, except that these paragraphs aver that Archbold was the agent of appellee in the sale of said goods and merchandise, but we regard this averment as a conclusion of fact which is not sustained by the plain stipulations of the contract, the substance of which is set out above. Appellee's demurrers to these paragraphs of answer were each sustained, and appellants electing to stand on their answers, judgment was rendered in favor of appellee, from which this appeal. The errors assigned are the rulings on the demurrers.

As we stated above, the fourth and sixth paragraphs of answer are similar to the third, except as indicated, and the separate and several demurrers addressed to said answers present a similar question, that of the agency of Archbold to procure the guaranty of appellants.

Appellants argue with much earnestness that any benefit derived from appellants' having signed the contract of guaranty as to the past due indebtedness passed to the appellee and not to the party securing appellants' signature thereto, implying thereby, as we understand appellants, that the execution of the contract of guaranty was wholly for the benefit of appellee. Appellants argue that when appellee delivered $1 to its representative, Archbold, with instructions to him to procure guarantors for a past due indebtedness to appellee, and instructed him to pay it to the guarantors, appellee thereby constituted said representative its agent. The paragraphs of answer, however, contain

no averments of a delivery of $1 by appellee to Archbold with instructions to procure guarantors for a past due indebtedness and to pay it to them. The contract of guaranty itself recites that "for and in consideration of the sum of $1 to me in-hand paid, the receipt of which is hereby expressly confessed and acknowledged, *or in consideration of the above named seller extending further credit to the said buyer,*" etc. It thus appears that the real substantial consideration for the contract of guaranty was not the sum of $1 paid to the guarantors, but it was the extending of further credit to the buyer, and that the execution of the contract of guaranty was not alone for the benefit of appellee, but that it inured as well to the benefit of Archbold, appellants' principal, in that it enabled him to renew his contract and to receive further credit from appellee. The fact that appellee prepared the contract of guaranty and sent it to Archbold with the direction to obtain guarantors thereon did not, within itself, constitute Archbold the agent of appellee. In *Helms* v. *Wayne Agricultural Co.* (1881), 73 Ind. 325, 38 Am. Rep. 147, on page 331, the court, speaking with reference to obtaining sureties upon a note, said: "It is not true, as is assumed, that if a creditor sends notes, 'either filled up or not filled up as to the amount of the same,' to his debtor, with a request that he get security on them, the debtor becomes, for the purpose of getting the security, the agent of the creditor. This is too plain to admit of argument. No authority is cited in support of the position advanced, and we deem it quite improbable that there is any." The principle there involved was the same as here. It is not to be assumed that because appellee prepared a contract of guaranty and sent it to Archbold with direction to obtain guarantors thereon, it thereby constituted Archbold its agent for such purpose. Such step was a prerequisite to the renewal of the contract between appellee and Archbold.

There is no averment in any of the paragraphs of answer tending to show that appellee was guilty of any act of fraud or of any fault or neglect in procuring the signature of the appellants to the contract of guaranty, or that it knew or had any reason to suspect that Archbold had falsely and fraudulently induced appellants to sign the same. It is the law that where a surety has been misled by the principal as to the character and extent of an obligation signed and assumed at the principal's request, he cannot make the fraud of the principal available as a defense, unless he can also show that the payee or obligee participated in or had knowledge of the fraud or deception. *Lucas* v. *Owens* (1888), 113 Ind. 521, 16 N. E. 196; *Jones* v. *Swift* (1884), 94 Ind. 516; *Lumber Co.* v. *Buchtel* (1879), 101 U. S. 633, 25 L. Ed. 1072; *J. R. Watkins Co.* v. *Coombes* (1916), 66 Okla. 126, 166 Pac. 1072; *Western N. Y. Life Ins. Co.* v. *Clinton* (1876), 66 N. Y. 326.

In the last case cited, the court says: "The position that the obligee in a bond is bound to seek out the sureties and explain to them the nature and extent of their obligation at the point of losing the security, or that he is to be held responsible for the fraudulent representations or concealment of the principal of any of the facts, is somewhat novel, and is not upheld by any adjudged case. It is the duty of the sureties to look out for themselves and ascertain the nature of the obligation embraced in the undertaking, and any other rule would not only work serious inconvenience, but render securities of this character of but little, if any, value."

So, in this case, it was the duty of the guarantors to look out for themselves and ascertain the nature of the obligation into which they were entering; and, as against appellee, they cannot be heard to say that they were misled by the principal's representation that he was not indebted to appellee, and that

they were ignorant of any existing debt, when the contract of guaranty executed by them expressly provided that appellants severally guaranteed unto appellee unconditionally "the payment in full of the balance due or owing said seller on account, as shown by its books at the date of the acceptance of this contract of guaranty by the seller, and the full and complete payment of all moneys due or owing said seller," etc.

Judgment affirmed.