Breitel, J.
The issue in this case could hardly be simpler, namely, whether a secured lender may release the collateral security, if so authorized by -the instrument of indebtedness signed by the sureties, without discharging the sureties. Confusion has been engendered, thus far, by the failure to distinguish the debtor’s equity of redemption, which may not be waived, from the surety’s rights in the collateral, which may be waived. The lack of precedent, matching and exact, is occasioned, no doubt, only by the novelty of the confusion.
Summary judgment was denied to plaintiff lender, who sues the guarantors on a once-secured debt. The ground for denial was that the lender might not release the collateral security without discharging the guarantors, despite express authority and consent to do so by the guarantors in the written instrument. An issue of fact was found, inter alia, in whether the lender’s conduct in releasing the collateral amounted to an affirmative act in breach of its duties to the guarantors. The Appellate Division affirmed, one Justice dissenting. Since consenting sureties are not discharged by a creditor’s release of collateral there should be a reversal.
Plaintiff lender had in March, 1965 advanced $26,206.14 to the debtor Newton Advertising Agency, Inc., evidenced by promissory note, signed as comakers by the principals of that corporation, the individual defendants in this action. The unpaid balance when this action was begun was $20,102.56, with interest. The note was secured by a chattel mortgage on kitchen equipment in a Florida restaurant then owned by the debtor. While the debt was still unpaid, the restaurant and its equipment were sold by the debtor to EGA Corp.
The critical provision in the promissory note stipulated that ‘ ‘ no release of any or all of the security * * * shall release any other maker, comaker, surety, guarantor or other party hereto in any capacity.” The critical event which ensued was - the release by the lender of the mortgaged kitchen equipment. After the sale of the restaurant at the request of the new owner, EGA Corp., the lender consented to the substitution of gas con *33 suming equipment for the mortgaged electrical cooking equipment. The restaurant did not fare well, and the gas company repossessed the substituted equipment on which it had a seller’s lien prior to the mortgage. Hence, the collateral security for the lender’s note was dissipated, first by the substitution, and then finally and completely by the repossession of the substitute.
There is no suggestion in the proffered evidence, as distinguished from tendered speculation, that the lender practiced any fraud or obtained any undisclosed benefit from the consent to the substitution of the collateral. In fact, it suffered too by the eventual loss of its collateral security.
There is no doubt that, since the Chancellor first intervened, an equity of redemption as a right in the borrowing debtor might not be waived in advance, however formal or framed the writing and however weighty the consideration (4 Pomeroy, Equity Jurisprudence [5th ed.], §§ 1180-1193, but esp. § 1193). That right moreover is one in the owner of the property who has pledged or mortgaged it to the lender. It is solely a right between creditor and debtor or one actually subrogated to the creditor. It is different and distinct from the right of sureties not to have collateral security discharged or released without their consent, except on the pain of discharging their obligation to the creditor (Stearns, Suretyship [5th ed.], §§ 6.13, 6.46; 50 Am. Jur., Suretyship, § 120).
The rights do not run between the same parties. Moreover, they do not have the same subject matter. The debtor’s unwaivable right of redemption looks to preserving for him the surplus value in the collateral asset by allowing him to redeem the asset by paying the debt or in a proper case recovering the surplus value (Mooney v. Byrne, 163 N. Y. 86, 96-98; Meehan v. Forrester, 52 N. Y. 277, 280-281). The surety’s waivable right looks to the value of the asset (other than or before the surplus may be computed) which may be appropriated to discharge the debt and therefore to discharge his secondary liability, or in the alternative, on payment by him of the debt, to receive the collateral as the creditor’s subrogee.
These general rules prevalent throughout Anglo-American jurisprudence, if not beyond, are embodied in the Uniform Commercial Code. Applicable to commercial paper is section 3-606, which provides that in various circumstances a release of col *34 lateral without consent may discharge an obligor on the instrument of indebtedness. The absence of consent is critical and expressed in the section. Official Comment 2 to that section reads: ‘ ‘ Consent may be given in advance, and is commonly incorporated in the instrument; or it may be given afterward. It requires no consideration, and operates as a waiver of the consenting party’s right to claim his own discharge.”
Particularly significant is it that the code section refers to any party to the instrument, including, therefore, the primary obligor. It differs in this respect from the old Negotiable Instruments Law which referred only to the discharge of persons secondarily liable on the instrument (Negotiable Instruments Law, § 201; 1955 Report of N. Y. Law Rev. Comm., vol. 2, pp. 414r-425). Hence, in this case it is immaterial who were the borrowers : defendants or their corporation. As a matter of fact it is not disputed that the corporation was the borrower, and it is only the form of the note which made the individual defendants, “ co-makers.”
The rule in the code is not new insofar as parties secondarily liable are concerned (cf. National Citizens’ Bank v. Toplitz, 178 N. Y. 464, 466-467; 42 N. Y. Jur., Negotiable Instruments, §§ 602-604, and cases cited). Indiana, like New York, had adopted the code before the instant transaction (Indiana, L. 1963, ch. 317, eff. July 1, 1964; New York, L. 1962, ch. 553, eff. Sept. 27, 1964). Nor is it suggested that the applicable Indiana law would be any different; hence, the rule of the forum governs (e.g., Zwirn v. Galento, 288 N. Y. 428, 432; Read v. Lehigh Val. R. R. Co., 284 N. Y. 435, 441).
This analysis really should dispose of the issue, but to tie up the loose end still remaining as to the borrower’s equity or right of redemption which may not be waived in advance, further comment is merited.
Section 9-506 of the Uniform Commercial Code defines the equity of redemption of a borrower in secured transactions (see, id., §§ 9-102, 9-104). It is entitled “ Debtor’s Right to Redeem Collateral.” It provides: “At any time before the secured party has disposed of collateral or entered into a contract for its disposition under Section 9-504 or before the obligation has been discharged under Section 9-505(2) the debtor or any other secured party may unless otherwise agreed in writing after *35 default redeem the collateral by tendering fulfillment of all obligations In accordance with the old equity rule mentioned earlier the right of redemption may not be waived in advance but only after default, and that rule, it is seen, is carried into the code. (The surety too, it is true, has an interest in the collateral, but only conditionally, because he may by subrogation be entitled to it. Before, however, the surety as subrogee may receive it, the collateral must still be in the hands of the creditor, and the surety may be subrogated only by paying the debt.) The important thing is that at no time before or after default may the creditor take the collateral for the debt and thus forfeit the debtor’s surplus value or equity in the collateral (see, e.g., Hughes v. Harlam, 166 N. Y. 427, 432, 433; King v. Van Vleck, 109 N. Y. 363; 14 C. J. S., Chattel Mortgages, § 434). Nor, because of the surety’s conditional interest in the collateral, an interest quite different from the debtor’s right of redemption, may he without consent of the surety release or impair the collateral (Cohen v. Rossmoore, 225 App. Div. 300, 305, and cases cited; see, also, Exchange Bank v. Ludlum, 246 App. Div. 892). Thus, the surety’s possible right to ‘ ‘ redeem ’ ’ as subrogee is protected. He may, however, with the consent of the surety (and of course the debtor too), given in advance or then, release the collateral to a third person, or even to the debtor himself (cf. National Park Bank v. Koehler, 204 N. Y. 174, 183; Standard Brands v. Straile, 23 A D 2d 363, 367; Ann., Accommodation Maker, Surety—Discharge, 2 ALR, 2d 260, in which the cases collected either impliedly or expressly make discharge contingent upon the absence of consent by the principal or surety, as, e.g., at p. 268; to similar effect, see Ann., Mortgagor — Release — Dealings with Grantee, 112 A. L. R. 1324, 1343; 81 A. L. R. 1016, 1025; 72 A. L. R. 389, 398-399; 41 A. L. R. 277, 306-314; 10 Williston, Contracts [3d ed.], § 1232 [at p. 745], § 1233). There is no public policy protecting necessitous debtors to prevent this. As for the surety, therefore, he may consent to anything to which the debtor has power to agree, that is, everything except to waive the equity of redemption in advance, and when he does so consent, he is not discharged because the creditor does that to which he has consented and to which lawfully he could consent (57 N. Y. Jur„, Suretyship and Guaranty, § 202). These principles follow from the discussion *36 of the law as it was before the code, and from the careful use of language in the code and the official comments demarking the nonwaivable equity or right of redemption (§ 9-506) from the rights to recourse or collateral waivable without limitation (§ 3-606).
Finally, it is possible to take notice of widespread commercial and banking practice to allow for the substitution of collateral (especially loans backed by negotiable securities and certain open land mortgages) between lender and borrower, on the advance consent of parties secondarily liable, a practice that would not exist if it had ever been the law that impairment of collateral, even with consent, would discharge a surety. For it should be obvious that any substitution of collateral could always raise an issue of fact whether the new substitution was equal in value to that substituted. So one ends at the beginning, the cause of the difficulty in this case was solely the confusion between a borrower’s nonwaivable right of redemption with a surety’s waivable right to rely on the collateral securing the debt.
Accordingly, the order of the Appellate Division should be reversed, with costs to appellants in all courts, and summary judgment granted in favor of plaintiff.
Chief Judge Fuld and Judges Scileppi, Bergan, Jasen and Gibson concur; Judge Burke taking no part.
Order reversed, with costs to appellant in all courts, and case remitted to Special Term for further proceedings in accordance with the opinion herein. Question certified answered in the negative.