**Al CARNEY, also known as Richard A. Carney, Donald G. Key and Bobby J. Key, Defendants Below,**

**Donald G. Key, Defendant-Appellant,**

v.

**CENTRAL NATIONAL BANK OF GREENCASTLE, Indiana, Plaintiff-Appellee.**

**No. 1–1082A284.**

Court of Appeals of Indiana,
First District.

June 28, 1983.
Rehearing Denied July 28, 1983.

Richard W. Lorenz, Hickam & Hickam, Spencer, for defendant-appellant.

John A. Kendall, Larry R. Hesson, Kendall, Wood, Coleman, Kessinger & Hesson, Danville, J. Lamont Harris, Harding & Henthorn, Crawfordsville, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant Donald G. Key (Key) appeals an adverse summary judgment in favor of Central National Bank of Greencastle, Indiana (CNB) on his guaranty agreement.

We affirm.

## STATEMENT OF THE FACTS

On January 5, 1979, CNB made a loan of $150,004 to Al Carney Chevrolet Buick, Inc. (Corporation) and took its note and security agreement. The note became due on January 5, 1980. CNB took as additional security a guaranty agreement, also dated January 5, 1979, executed by Richard A. Carney, Bobby J. Key, and Donald G. Key, the original stockholders of the corporation. The signers of the guaranty agreement personally guaranteed the payment of any and all indebtedness of the Corporation to CNB, of any nature whatsoever subsequent to January 5, 1979, and further consented

"to any change, release or surrender of securities for said indebtedness and that said indebtedness may be compromised or renewed or extended from time to time at an increased rate of interest without notice to me, and I hereby waive all rights to any property mortgaged or otherwise pledged under the instruments of indebtedness described herein. . . .

I hereby waive notice of the acceptance of this guaranty and of credit given or to be given under the instruments herein described, and I waive notice of non-payment of any and every note and/or other obligation covered by this guaranty."

Thereafter, on September 24, 1979, Key sold all of his interest, 375 shares, to Carney and received from Carney a hold harmless agreement on the note and Guaranty. On February 8, 1980, CNB and the Corporation,

acting through Carney and Bobby J. Key, entered into an extension agreement extending the time for payment of the balance due on the note of $126,680.27 to January 15, 1981, and raising the interest from 11 percent to 15 percent. Key was not notified of and did not join in this agreement. On June 3, 1980, the Corporation, acting through Carney and Bobby J. Key, filed a bankruptcy petition under Chapter 11 of Title 11, United States Code. Under a court-approved plan, the Corporation continued to operate the business in an attempt to save it, but failed. Key neither received notice of nor consented to the Chapter 11 proceedings.

CNB then filed its suit against the guarantors for the balance of the note. Key raised the affirmative defenses of accord and satisfaction, estoppel, and constructive release. The defenses centered around his assertion that he was not an officer, employee, or stockholder of the corporation on the date of the extension agreement, did not execute the agreement, nor did he consent to it. He claims that because of the extension and bankruptcy proceedings under those circumstances he, as guarantor, was released.

The trial court rendered judgment for CNB against the guarantors, and for Donald G. Key against Carney on his cross claim on account of the hold harmless agreement. Only Donald G. Key appeals.

## ISSUES

The issues presented for review by this appeal are:

I. Whether the trial court erred in finding that Donald G. Key should be treated differently as a "guarantor" than as a "debtor" under Ind.Code 26–1–9–105(a), a debtor otherwise being entitled to the non-waivable defenses of Ind.Code 26–1–9–501(3).

II. Whether the trial court erred in finding that separate defendant Donald G. Key had not "depended on nor was looking to" the protec-

tion of the collateral for insulation and discharge from responsibility on the obligation;

III. Whether the trial court erred in finding that the plaintiff Central National Bank did not overreach or take advantage of the collateral to the detriment of the guarantors in a manner inequitable to the guarantor. Specifically, whether the court erred in finding there was no evidence of bad faith, and overreaching on the part of the plaintiff, or evidence that the plaintiff took advantage of its position to the detriment of the guarantors;

IV. Whether the trial court erred in failing to find that the defendant Donald G. Key was discharged pursuant to Ind.Code 26–1–3–606(1) by the plaintiff's consent to the bankruptcy arrangement whereby the Corporation continued doing business and in the process sold collateral secured pursuant to the security agreement;

V. Whether the trial court erred in finding that the separate defendant Donald G. Key was not a secured party with regard to the collateral and therefore entitled to notice of sale or disposition of collateral pursuant to Ind.Code 26–1–9–506;

VI. Whether the trial court erred in failing to make any finding concerning the effect of the executed Extension Agreement which extension was made without the consent or knowledge of the defendant Donald G. Key, and which extension agreement increased the interest rate on the principal obligation and thereby affected materially the rights of defendant Donald G. Key; and

VII. Whether the trial court erred in failing to grant the defendant Donald G. Key's motion for summary judgment.

Key argues Issues I, IV and VI together, II and III together, and Issue V individually. Issue VII is encompassed in discussion of all other issues.

## DISCUSSION AND DECISION

*Issue I, IV and VI. Whether prior consent to extension of time and release of collateral is binding on a surety*

■■■■ Our analysis of the problem is as follows: A guarantor is a surety. Ind.Code 26–1–1–201(40). Ordinarily a surety is released if the creditor, without the surety's consent, extends the time of payment or impairs the collateral. Ind.Code 26–1–3–606(1)(a); *Indiana Telco Federal Credit Union v. Young,* (1973) 156 Ind.App. 483, 297 N.E.2d 434. A creditor is obligated to give a surety notice of default. *Indiana Telco, supra.* Where a creditor releases or negligently fails to protect the security put in his possession by the principal debtor, the surety is released to the extent of the value of the security so impaired. *White v. Household Finance Corporation,* (1973) 158 Ind.App. 394, 302 N.E.2d 828. Likewise, any alteration of the principal's contract releases the surety. *Indiana University v. Indiana Bonding and Surety Company,* (1981) Ind.App., 416 N.E.2d 1275. However, in this instance, as shown by the Statement of the Facts, prior consent to extension of time and release of collateral was given by Key in the guaranty agreement. The essential question in this case is whether such prior consent is binding.

Key argues that he has debtor status under Ind.Code 26–1–9–105(1)(a). Therefore, as a debtor, the defenses of extension of time and surrender of collateral are non-waivable under Ind.Code 26–1–9–501(3). Ind.Code 26–1–9–105(1)(a), relied upon by Key, states:

" 'Account debtor' means the person who is obligated on an account, chattel paper, contract right or general intangible[.]"

Ind.Code 26–1–9–501(3) provides that as to a debtor there are certain non-waivable defenses. They include an accounting for the surplus proceeds from disposition of collateral under Ind.Code 26–1–9–502 and 504;

disposition of collateral with notice to debtor under 9–504(3) and under 9–505 where more than 60 percent has been paid on the debt; where creditor accepts the collateral as discharge for the obligation with notice to the debtor under 9–505(2); redemption of collateral by debtor under 9–506; and failure of the secured party to proceed according to 9–501 through 9–507.

Key cites cases from other jurisdictions which hold that a guarantor is entitled to treatment as a debtor under 9–501, and entitled to notice of the sale of collateral. Examination of those cases does not reveal the presence of a prior consent provision, nor do the cases from Indiana. *Indiana University, supra, White, supra; Indiana Telco, supra.* Key cites *Hall v. Owen County State Bank,* (1977) 175 Ind.App. 150, 370 N.E.2d 918, for the proposition that as between the secured party and the debtor (which he equates to a guarantor), the secured party may not insert a waiver provision in the security agreement as to notice of sale after default. Key shows that he received no notice of

(1) the extension agreement with increased interest, or

(2) the bankruptcy action where CNB participated in and allowed the Corporation to use and liquidate collateral which modified the security agreement.

This latter allegation is more of an assertion. The record is silent as to details. We propose to resolve the problem along different lines and based upon different authorities from those relied upon by the parties. We believe ours to be the proper approach.

The authoritative work on "Uniform Commercial Code," Second Edition, White and Summers, Accommodation Parties, § 13–15, p. 527, addresses the problem thusly:

* "The creditor can forestall a surety's claim of discharge under 3–606 in either of two ways. First, he may procure the surety's express or implied consent to the modification in the relationship with the debtor. Second, by adding a sentence to the modification agreement to 'expressly

reserve' his rights against surety, he bars a discharge. According to Comment 2 to 3–606 the consent may take many forms and come at any time:

Consent may be given in advance, and is commonly incorporated in the instrument; or it may be given afterward. It requires no consideration, and operates as a waiver of the consenting party's right to claim his own discharge.

An express statement of consent incorporated in the instrument is effective against the surety. However, under 3–118(f) a consent is presumed to be for 'a single extension for not longer than the original period [unless otherwise specified].'"

Ind.Code 26–1–3–118(f) states:

"Unless otherwise specified consent to extension authorizes a single extension for not longer than the original period. A consent to extension, expressed in the instrument, is binding on secondary parties and accommodation makers. A holder may not exercise his option to extend an instrument over the objection of a maker or acceptor or other party who in accordance with Section 3–604 tenders full payment when the instrument is due."

Williston on Contracts, Vol. 10, § 1260, citing 3–118(f), states:

"The language of the Code, as will be seen, suggest that a surety is not released where the extension of time is provided for in the instrument itself."

■ Finally, the court ruled on this issue in *Holmes v. Rushville Production Credit Association,* (1976) 170 Ind.App. 509, 353 N.E.2d 509, opinion on rehearing 170 Ind. App. 509, 355 N.E.2d 417, supplemental opinion 170 Ind.App. 509, 357 N.E.2d 734 (reinstating original opinion). There one Downs, as principal, borrowed money and gave PCA a security interest in machinery and a note in return for the loan. The note was co-signed by Holmes as an accommodation party and provided that "[t]he makers . . . consent to any partial release of collateral and extensions of time." 353 N.E.2d at 510. Thereafter a revised payment sched-

ule was made, and PCA released some security to another debtor. Holmes argues that she had not signed the revised payment schedule or consented to the release of security, and should be discharged. The court denied these defenses under Ind.Code 26–1–3–606(1) because of the prior consent in the instrument. We read Holmes and Ind.Code 26–1–3–118(f) as meaning that prior consent to extension of time and release of collateral is binding upon a guarantor.

*Issues II and III. Bad faith and overreaching*

 Key argues that the trial court erred in finding that (1) all guarantors should be treated equally, (2) the guarantors were not depending upon the collateral, and (3) CNB had not overreached the guarantors and used bad faith in the transactions. This argument is premised upon his contention that he was out of the business, did not participate in the extension agreement or bankruptcy, and did not receive notice of either. There are no specific representations of fraud. He asserts that the prior consent provision was unconscionable and cites *Weaver v. American Oil Co.,* (1971) 257 Ind. 458, 276 N.E.2d 144. The true basis of his argument is summed up on page 49 of his brief as follows:

> "The answer partly lies in the nature of the original transaction where the guarantee was signed simultaneously with the execution of the original promissory note. In order to get the loan at all, guarantee and all must be signed. In their enthusiasm for the new business venture apparently all caution is thrown to the wind."

Such a contention cannot be used to defeat a substantial business transaction solemnized in writing. Key was not an incompetent or a bystander, but was one of the stockholders and principals of an automobile dealership. At his request and that of the other guarantors, their corporation borrowed CNB's money and spent it. The record does not reflect Key's dissatisfaction with CNB while the corporation received and spent CNB's money; rather, Key seemingly discovered CNB's acts of bad faith and overreaching only when it demanded Key pay according to the tenor of his instrument. A person is presumed to understand the documents which he signs. *Robertson's Music House v. Holy,* (1925) 82 Ind. App. 529, 146 N.E. 862. The financing arrangement here is not unusual or complicated, but is customary in the commercial world. This argument is untenable.

*Issue V. Whether guarantor was a secured party*

Here Key argues that the trial court erred in finding that he was not a secured party in regard to the collateral and therefore not entitled to notice of sale or disposition of the collateral pursuant of Ind.Code 26–1–9–506. That section provides that at any time prior to the time the secured party has disposed of the collateral, the debtor or any other secured party may redeem it. He cites only *Indianapolis Morris Plan Corporation v. Karlen,* (1971) 28 N.Y.S.2d 30, 319 N.Y.S.2d 831, 268 N.E.2d 632, a New York Court of Appeals case. There the question was whether the secured lender could release the collateral security, if authorized by the instrument of indebtedness signed by the sureties, without discharging the sureties. In that analysis the court observed that an equity of redemption may not be waived by the borrower in advance. It is solely a right between the creditor and debtor, or one actually subrogated to the creditor. It is different and distinct from the right of sureties not to have collateral security discharged or released without their consent, except on pain of discharging their obligation to the creditor. The court, relevant to the first issue discussed, noted:

> "These general rules prevalent throughout Anglo-American jurisprudence, if not beyond, are embodied in the Uniform Commercial Code. Applicable to commercial paper is section 3–606, which provides that in various circumstances a release of collateral without consent may discharge an obligor on the instrument of indebtedness. The absence of consent is critical and expressed in the section. Official Comment 2 to that sec-

tion reads: 'Consent may be given in advance, and is commonly incorporated in the instrument; or it may be given afterward. It requires no consideration, and operates as a waiver of the consenting party's right to claim his own discharge.'"

319 N.Y.S.2d at 833, 268 N.E.2d at 634.

■ Ind.Code 26–1–9–504 permits the debtor or any other secured party to redeem the collateral by tendering payment. It is true, the surety too has an interest in the collateral. However, this interest is conditional because the surety may be entitled to the collateral only by subrogation. Before the surety as subrogee may receive it, the collateral must still be in the hands of the creditor, and the surety may be subrogated only by paying the debt. The court further stated that

"nor because of the sureties conditional interest in the collateral, an interest quite different from the debtor's right of redemption, may be without consent of the surety release or impair the collateral. [Citations omitted] Thus the sureties possible right to 'redeem' as subrogee is protected. He [creditor] may, however, with the consent of the surety [and of course the deb or too], given in advance or then, release the collateral to a third person, or even to the debtor himself."

319 N.Y.S.2d at 833–34, 268 N.E.2d at 634–5. The holding of the court was for the lender. We read this case as authority that prior consent is binding on a surety unless he becomes subrogated by payment. Such did not happen in this case.

For the above reasons this cause is affirmed.

Affirmed.

ROBERTSON, P.J., and RATLIFF, J., concur.