Edward K. SKRYPEK, Appellant
(Defendant Below),

v.

ST. JOSEPH VALLEY BANK (now Midwest Commerce Banking Company),
Appellee (Plaintiff Below).

No. 3–284A41.

Court of Appeals of Indiana,
Third District.

Oct. 25, 1984.

Mary E. Davis, Davis & Davis, P.C., Elkhart, for appellant.

Geoffrey K. Church, Church & Nilsson, Elkhart, for appellee.

STATON, Presiding Judge.

Edward Skrypek appeals from summary judgment in favor of St. Joseph Valley Bank on a guaranty to answer for the indebtedness of RBS Industries, Inc. Skrypek claims there were material questions of fact raised which precluded disposition of the matter by summary judgment. Skrypek also claims errors of law in the trial court's determination of the rights and liabilities of the parties under the guaranty agreement.

Though Skrypek's Statement of Issues in his brief is not entirely consistent with the Motion to Correct Error, not particularly consistent with the Argument section of the brief, by indulging Skrypek with a liberal reading of both the Motion to Correct Error and the brief, we are able to identify and restate the issues as follows: [1]

I. Whether the terms of the guaranty are ambiguous and therefore create genuine issues of material fact which cannot be resolved by summary judgment;

II. Whether Skrypek, by the terms of the agreement, expressly waived notice of future loans, default by RBS, or the defense of impairment of collateral;

---

**1.** In Section F of the brief Skrypek argues the trial court erred in making a factual determination that Skrypek's failure to exercise a right of termination of the guaranty bound him to new indebtedness. While we disagree that the court made a *factual* determination on this issue, we find that Skrypek did not raise this alleged error in his Motion to Correct Error and has, therefore, waived the issue. Ind.Rules of Procedure, Trial Rule 59; AP. 8.3(A)(7).

III. Whether there were genuine issues of material fact regarding fraud or misrepresentation in the execution of the guaranty.

Affirmed.

 On review of a grant of summary judgment we will affirm if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Integrity Insurance Co. v. Lindsey* (1983), Ind.App., 444 N.E.2d 345, 347. The trial court may consider the pleadings, exhibits, depositions, affidavits and testimony on file but may not resolve conflicting facts. A genuine issue exists if the trial court would be required to resolve disputed facts. *McKenna v. City of Fort Wayne* (1982), Ind.App., 429 N.E.2d 662, 664. Any doubt as to a fact, or an inference to be drawn therefrom, is resolved in favor of the party opposing the motion for summary judgment. *Poxon v. General Motors Acceptance Corp.*, (1980), Ind.App., 407 N.E.2d 1181, 1184.

The record shows that in January, 1976 Edward Skrypek was an officer, director and shareholder of RBS Industries, Inc. when the company obtained a loan of Twenty-five Thousand Dollars ($25,000.00) from St. Joseph Valley Bank (SJVB). The bank required security for the note, including guaranties of Skrypek and Peter C. Ruch, President of RBS, so on January 30, 1976 Skrypek executed a document captioned "Continuing Guaranty."

At an RBS Directors Meeting held June 28, 1976, at which Skrypek was present, the Board voted to increase the loan from $25,000.00 to $38,000.00. The loan was made on August 18, 1976 and renewed on November 2, 1978 at a higher rate of interest.[2]

In December of 1976 Skrypek sold his stock in RBS and resigned as an officer and director of the company. Through his firm, Mobil Office, Inc., Skrypek transacted business with RBS through 1978, paying RBS more than $800,000.00 for the purchase of mobile offices manufactured and sold by RBS. The monies were deposited in an RBS account at St. Joseph Valley Bank.

RBS subsequently defaulted on the loan. After making demand on the note for payment from RBS and later, making a demand on Ruch and Skrypek under the guaranties, SJVB filed suit.

I.

## Ambiguity of the Guaranty

Skrypek argues that the trial court erred in finding the terms of the guaranty agreement unambiguous with regard to the parties' intent as to the scope of the guaranty. Skrypek asserts that it was never his intent to guaranty any debt of RBS beyond the initial loan made in January, 1976 and that ambiguities in the guaranty on this issue raise questions of material fact which preclude summary judgment.

His claim of ambiguity focuses entirely on the construction and definition of the word "accrue" contained in the following phrase which is repeated several times in the document, whereby he agrees to pay

"any and all indebtedness which now exists and/or which may hereafter accrue...."

from RBS to the Bank. Skrypek argues that "accrue" could reasonably be interpreted to mean expenses and interest arising from the original loan as opposed to additional or new indebtedness. Since the term is ambiguous, argues Skrypek, the intent of the parties cannot be ascertained as a matter of law from the document and requires a trial of the issue. We disagree.

 The contract of a guarantor is to be construed like any other contract, that is, according to the intent of the parties. The intention of the parties is to be ascertained from the instrument itself read in the light of the surrounding circumstances. *Merchants National Bank v. Winston*

---

2. On a separate note SJVB loaned an additional Five Thousand and no/100 Dollars ($5,000.00) to RBS on April 21, 1977. That loan has been repaid since the suit was filed and is no longer at issue.

(1959), 129 Ind.App. 588, 159 N.E.2d 296, 302. A guaranty contract may be either continuing or limited and the rule is that unless the words in which the guaranty is expressed fairly imply that the liability of the guarantor is to be limited, it continues until it is revoked. *Wright v. Griffith* (1890), 121 Ind. 478, 23 N.E. 281, 282. A continuing guaranty is one which is not limited to a single transaction but contemplates a future course of dealing, covering a series of transactions. *Vidimos, Inc. v. Vidimos* (1983), Ind.App., 456 N.E.2d 455, 458 (*reh. denied*). Language similar to that in Skrypek's guaranty is used in 38 *Corpus Juris Secundum*, "Guaranty", § 7, at 1142, in which a continuing guaranty is said to contemplate "a succession of liabilities, for which, as they *accrue*, the guarantor becomes liable." (Emphasis supplied.).

When the entire guaranty document is read as a whole it is clear that, in addition to recitations in more than the one place that it is a continuing guaranty, the language expresses the possibility of additional loan transactions. For example, paragraph two of the document reads:

> "This is a continuing guaranty and by this instrument the Guarantors guarantee the prompt payment of any and all indebtedness which may now exist and/or may hereafter accrue at any time or times from said Debtor to said Bank until the Guarantors have delivered to said Bank a notice signed by them of their election not to guarantee *any new indebtedness from said Debtor to said Bank which may thereafter accrue*, but such notice shall not in any way affect the promise of the Guarantors hereunder to pay any and all indebtedness from said Debtor to said Bank existing at the time such notice is given."

(Emphasis supplied.). Paragraph three of the guaranty waives notice of "the extension of credit from time to time given by said Bank to said Debtor...." In spite of Skrypek's strenuous assertions to the contrary, we find this language and the document as a whole, to be an unambiguous expression of the parties' intent to guaranty any and all indebtedness of RBS to SJVB.

Where there is no ambiguity in the language of the contract, the construction of the guaranty is a question of law. *Loudermilk v. Casey* (1982), Ind.App., 441 N.E.2d 1379, 1383. Under the "Four Corners rule" followed in Indiana for the construction of written instruments, determination of the intent of the parties is limited to the express language found within the instrument. Parol evidence is inadmissible where there is no ambiguity in the language. *American Fletcher National Bank v. Pavilion, Inc.*, (1982), Ind.App., 434 N.E.2d 896, 904 (*vacated on other grounds*, Ind., 453 N.E.2d 156); *Hauck v. Second National Bank of Richmond* (1972), 153 Ind.App. 245, 286 N.E.2d 852, 861. The trial court was correct, therefore, in rejecting Skrypek's extrinsic evidence regarding his intentions, and holding that there was no genuine issue of material fact.

## II.

### Consent and Waiver

Notwithstanding the scope of his liability under the guaranty agreement, Skrypek contends that he should be discharged from the guaranty because the Bank permitted material changes in the loan agreement with RBS without Skrypek's consent; the Bank failed to notify Skrypek that RBS was in default; and the Bank failed to protect the loans by availing itself of a right of set-off against RBS deposits, thereby impairing the collateral securing the note.

Skrypek correctly cites authority for the proposition that any binding change in the principal's contract to which the guarantor or surety does not consent will discharge the surety from liability. *Indiana University v. Indiana Bonding & Surety Co.*, (1981), Ind.App., 416 N.E.2d 1275, 1280; *Orange-Co, Inc. v. Brown* (1979), 181 Ind. App. 536, 393 N.E.2d 192, 197. He maintains that when SJVB agreed to renew the

August, 1976 note at a higher rate of interest without his knowledge or consent it agreed to a material alteration of the contract which discharged Skrypek as a matter of law. Skrypek acknowledges that the guarantor may give such consent prospectively in the guaranty instrument, citing *Carney v. Central National Bank of Greencastle* (1983), Ind.App., 450 N.E.2d 1034, but denies that he gave such consent in his guaranty agreement to SJVB. He appears to distinguish the consent language in *Carney, supra,* at 1035, in which the guarantor consented

"to any change, release or surrender of securities for said indebtedness and that said indebtedness may be compromised or renewed or extended from time to time at an increased rate of interest without notice to me, and I hereby waive all rights to any property mortgaged or otherwise pledged under the instruments of indebtedness described herein. . . .

"I hereby waive notice of the acceptance of this guaranty and of credit given or to be given under the instruments herein described, and I waive notice of non-payment of any and every note and/or other obligation covered by this guaranty."

The guaranty executed by Skrypek contained the following provisions:

"Each of the Guarantors *waives all notice* of acceptance of this contract by the Bank; *all notice of the extension of credit from time to time* given by said Bank to said Debtor; and *all notice of the amount of the indebtedness* of the Debtor to the Bank which may exist from time to time, and agree that if any one of the undersigned desires at any time to ascertain the amount of liability accrued under this guaranty, he will make inquiry from said Bank.

Each of the Guarantors hereby waives presentment for payment, protest and notice of protest and of non-performance of any note or notes made or hereafter made by the Debtor to said Bank or of any other items of indebtedness held or hereafter held by said Bank against said Debtor. Each of the Guarantors further waives all rights which he has or may have by statute or otherwise to require the Bank to institute suit against said Debtor or to exhaust its right or remedies against said Debtor, the Guarantors hereunder and each of them being bound to the payment of each and all indebtedness of said Debtor to said Bank whether now existing or hereafter accruing, as fully as if such indebtedness was directly owing to said Bank by him and as fully as if each Guarantor was a joint maker with the Debtor upon each note made or hereafter made by said Debtor to said Bank.

\*　　\*　　\*　　\*　　\*　　\*

Forbearance on the part of the Bank to take steps to enforce the payment of any indebtedness held by it against said Debtor, arising from his default in any respect whatever, *or the giving of further time to said Debtor shall in no wise release the Guarantors* or any of them, but they and each of them shall remain liable hereunder for the prompt payment of all notes signed by said Debtor and made to said Bank and all renewals thereof or substitutions therefor and all other indebtedness which may now exist and/or may hereafter accrue from said Debtor to said Bank.

*The Bank may take from said Debtor any new or additional or substituted security from time to time* without any way impairing the obligation of the Guarantors nor shall the impairment of the security which said Bank may from time to time hold from said Debtor in any way operate to discharge any of the Guarantors in whole or in part, it being specifically agreed that the Bank is not required to exercise diligence to enforce its rights against said Debtor."

(Emphasis added.).

We feel a fair reading of the quoted provisions indicates consent indistinguishable from that approved in *Carney, supra.* We note specifically the waiver of notice of the extension of credit and notice of the amount of the indebtedness; agreement

that giving further time or taking new or additional security will not operate to discharge the guarantor. Likewise, we find the quoted provisions unambiguous with regard to the issues of notice of default and impairment of collateral. The second quoted paragraph specifically waives notice of non-performance of any note or notes, as well as any right to require the bank to institute suit or exhaust remedies against the Debtor. The third and fourth paragraphs further describe the Bank's right to forbear bringing suit or otherwise enforcing payment. Furthermore, it is explicitly provided that impairment of security shall not operate as a discharge of the guarantor. We fail to see how these provisions could be interpreted as requiring SJVB to notify Skrypek of the default, resort to RBS deposits, or to take any steps whatsoever to ensure its right to rely on Skrypek's guaranty.[3] *Loudermilk v. Casey, supra* at 1386; *see Gemmer v. Anthony Wayne Bank* (1979), 181 Ind.App. 379, 391 N.E.2d 1185. None of the authorities cited in Skrypek's brief involved discharge of a guarantor where there was consent or waiver language in the guaranty agreement.

The trial court committed no error in holding that Skrypek was not discharged from liability under the guaranty by any action or inaction of the Bank.

### III.

### Fraud or Misrepresentation

As we noted earlier, certain inconsistencies between Skrypek's Motion to Correct Error, Statement of the Issues and Argument section of the brief necessitate a generous reading in order for us to find a properly preserved allegation of error on the third issue which we have characterized as Fraud or Misrepresentation. Skrypek cited no authority for these arguments in either the Motion to Correct Error or the brief, but apparently invites us to find that the circumstances under which he executed the guaranty agreement raise questions of material fact which preclude summary judgment.

Skrypek seems to suggest that the parties' intent regarding the scope of the guaranty is clouded by the fact that the document was presented to Skrypek for signing by Peter Ruch. Skrypek's "Statement of the Issues" in his brief poses the issue as one involving an agency relationship between Ruch and the Bank, whereby statements made by Ruch to Skrypek concerning the purpose and scope of the guaranty are claimed to be admissions of the Bank. Skrypek argues that he relied on those representations as manifestations of the Bank's intent.

In granting the Motion for Summary Judgment the trial court found that Skrypek had alleged no facts in support of his claim of misrepresentations, but furthermore, he was not entitled to rely on any representations which may have been made. We must agree with the trial court.

Not only does Skrypek fail to cite any authority for this theory, we find the argument utterly untenable. In the first place, Skrypek cannot be permitted to rely on his own failure to read and ascertain the provisions of the document he was signing. At the time he signed the guaranty Skrypek was an officer, director and shareholder of RBS Industries. He was in as favorable a position as anyone to know or ascertain the financial state of RBS and the status of its financial dealings with SJVB. He was apparently an experienced businessman and well educated. There is nothing to suggest that he was prevented from reading the guaranty before signing it. A guarantor cannot avoid his liability on the ground that he signed the instrument under a mistake, due to his own fault, as to the facts, especially where he is put on inquiry and should ascertain the facts. 38 *CJS*, "Guaranty", § 30 at 1169. It is no excuse that he signs the guaranty without

---

**3.** Because we conclude that Skrypek did consent under the guaranty, we do not find it necessary to address his contention that the guaranty should be governed by the discharge provisions of IC 26–1–3–606 regarding negotiable instruments.

reading it but relies instead on the statements of others. *Wood v. Wack* (1903), 31 Ind.App. 252, 67 N.E. 562, 564. In Indiana, a party to an arm's length transaction clearly has no right to rely upon another party's representations regarding the legal effect of an unambiguous instrument. *American Fletcher National Bank, supra* at 907; *Plymale v. Upright* (1981), Ind. App., 419 N.E.2d 756, 768.

■ Secondly, there is no logic or authority for claiming that the Bank engaged Ruch as its agent for the purpose of obtaining Skrypek's signature. On the contrary, Ruch, like Skrypek, was an officer and director of the debtor, RBS. Ruch and Skrypek were on the same side of the transaction, attempting to obtain financing from SJVB. The fact that Ruch may have been involved more directly in the negotiations with SJVB than was Skrypek does not make Ruch an agent of the Bank. In *Archbold v. W.T. Rawleigh Co.*, (1928), 89 Ind.App. 337, 163 N.E. 538, where a similar claim was made by a guarantor, this Court held that the fact that the guarantee prepared a contract of guaranty and sent it to the principal with the direction to obtain guarantors did not constitute the principal as the agent of the guarantee. *Id.* 163 N.E. at 540. Thus, the court held that the guarantee was not responsible for any misrepresentations or deception practiced by the principal, or other third person, on the guarantor absent some showing of the guarantee's knowledge of or participation in the deception. *Id.*

As we have concluded that the guaranty was, indeed, unambiguous with respect to its continuing nature, and with respect to the rights and responsibilities of the parties, we affirm the trial court's holding that there is no genuine issue of material fact with regard to the circumstances of the execution of the guaranty and that as a matter of law Skrypek cannot prevail on any theory of fraud or misrepresentation on the part of either the Bank or Peter Ruch.

The judgment is affirmed.

GARRARD, J., concurs.

RATLIFF, J. (by designation), concurs.