**CREDIT ALLIANCE CORPORATION,**
**Plaintiff–Appellant,**

v.

**Patricia Ann CAMPBELL,**
**Defendant–Appellee.**

**No. 87–1385.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 26, 1987.
Decided April 29, 1988.

Sol D. Bromberg, New York City, Corneal L. Domeck, III, Louisville, Ky., for plaintiff-appellant.

James F. Flynn, Newman, Trockman, Lloyd, Flynn, & Rheinlander, P.C., Evansville, Ind., for defendant-appellee.

Before BAUER, Chief Judge, WOOD and MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This case is an appeal from the district court's grant of defendant's motion for relief from judgment under Federal Rule of Civil Procedure 60(b). Plaintiff had obtained on October 21, 1980, a default judgment in the Southern District of New York enforcing a guaranty contract against the defendant. The judgment was in the amount of $1,302,954.80. The plaintiff registered the judgment in the District Court for the Southern District of Indiana on December 4, 1980 in accordance with 28 U.S.C. § 1963 (1982). On January 9, 1984, Patricia Campbell filed her motion for relief in the district court in Indiana. The court granted this motion on November 26, 1984. We reverse the district court's grant of relief setting aside the judgment.

## I. FACTUAL BACKGROUND

In late 1977 or early 1978 Ralph Douglas Campbell, the defendant's husband, was a heavy equipment salesman for Stockberger Machinery, Inc. Steve Stockberger, Campbell, another salesman, Tom Marshall, and a physician, James Spahn, entered into a partnership they called Indicoal. The partners' intention was to strip-mine coal at a mine in Kentucky, and, to further this purpose, the partners acquired equipment from the Stockberger Company. A Credit Alliance sales representative, Harold Kaplan, sold floor-plan and end-user financing arrangements for Credit Alliance Corporation in the Evansville, Indiana area. Kaplan arranged financing for the business venture through Credit Alliance. The partners executed a conditional sales contract with Stockberger on May 18, 1978; Stockberger assigned the contract to Credit Alliance the same day; and the partners and their wives, including the defendant, signed a guaranty for Indicoal's debts on May 22, 1978. There was undisputed testimony that the wives did not play an active role in Indicoal's operations. The defendant signed the guaranty without reading it, and she did not receive a copy of the document.

Indicoal began to experience financial difficulties soon after its formation, and fell behind in its payments to Credit Alliance. Meanwhile, the defendant and her husband developed serious marital difficulties which led to their separation at the end of 1978 and divorce in March of 1979. On September 29, 1978, Indicoal and Credit Alliance entered into an agreement to extend Indicoal's payment period. Although the original guaranty had provided that the guarantors consented to "any agreement or arrangements whatever with subject or anyone else, including without limitation, agreements and arrangements for payment extension," Credit Alliance customarily executed new extension agreements with all guarantors. The defendant's husband signed the agreement for the defendant without her knowledge or consent. Credit Alliance granted Indicoal a second extension on March 29, 1979, again without the knowledge or consent of the defendant, whose marriage to Campbell had been dissolved two weeks earlier.

On January 15, 1980, Credit Alliance compromised and settled the Indicoal debt with Dr. Spahn and on August 14, 1980, compromised and settled with the Marshalls. A proposed settlement March 6, 1980, between Credit Alliance, Campbell, and Marshall fell through when Campbell's check was dishonored. The defendant was unaware of these events.

On May 2, 1980, the plaintiff filed this action in the United States District Court for the Southern District of New York. In accordance with the terms of the guaranty, summonses were served on Credit Alliance as agent for the defendants. Credit Alliance sent two certified letters to the defendant notifying her of the lawsuit, but both letters were returned.

The defendant remained unaware of the lawsuit, the entry of default judgment October 21, 1980, and the registry of the judgment in the Southern District of Indiana December 4, 1980, until shortly after the United States Marshal attached all the funds in her bank account. The writ of execution was issued, and the defendant became aware of it, in November of 1983.

The defendant filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). The Southern District of Indiana stayed enforcement of the New York judgment. The parties stipulated, contrary to the guaranty language, that Indiana was the proper forum and Indiana law should apply. We find this to be a reasonable stipulation as to the applicable law. *Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 n. 2 (7th Cir. 1987); *Lloyd v. Loeffler*, 694 F.2d 489, 495 (7th Cir.1982). On November 10, 1986, the court heard evidence on the motion. The court considered defendant's arguments that the guaranty was unsupported by consideration and that her obligation had been so altered as to discharge her. The court found validity in the latter assertion, and granted defendant's motion.

## II. DISCUSSION

Although the parties did not raise the issue, we first consider the propriety of the Indiana courts as a forum for defendant's Rule 60(b) motion.

"The decision to grant or deny relief under Fed.R.Civ.P. 60(b) is committed to the discretion of the trial court." *Fuhrman v. Livaditis*, 611 F.2d 203, 204 (7th Cir.1979). We therefore need only determine whether the court abused its discretion.

In the *Fuhrman* case Fuhrman, a citizen of Iowa, sued Livaditis, a citizen of Illinois, in the Northern District of Iowa, based on diversity of citizenship. Process was served by certified mail. The return receipt indicated that Livaditis had received notice of the suit. He did not file an appearance and the court entered a default judgment against him. Notice of the default judgment was sent through certified mail to the defendant.

Fuhrman registered the judgment in the Northern District of Illinois pursuant to 28 U.S.C. § 1963. Almost a year after the judgment was registered in Illinois, Livaditis filed a motion for relief from judgment under Rule 60(b). The Northern District of Illinois denied the motion without prejudice, noting that Livaditis could file his motion in the Northern District of Iowa, the court that rendered the judgment.

As we mentioned on appeal, "[o]rdinarily, a motion for relief from judgment is addressed to the court which rendered judgment." 611 F.2d at 204. Generally, "it is more convenient for motions for relief from judgment to be addressed to the [rendering] court." *Id.* Two policy considerations support the general rule:

> (1) comity among the federal district courts is furthered if the registering court refers the question of relief from judgment to the court which ordinarily entered the judgment; (2) efficient judicial administration is furthered if the registering court defers to the original court, which is likely to be more familiar with the issues raised by the motion for relief from judgment.

*Id.*

In *Fuhrman*, as here, there was no litigation with which the rendering court could become familiar. There was simply a default. In *Fuhrman*, however, Livaditis argued that the rendering court lacked personal jurisdiction over him. This challenge required the court to apply the laws of the state of Iowa, laws with which the district court in Iowa was more familiar than was the district court in Illinois. The federal

court in Iowa was thus a more convenient forum for the motion.

The defendant here does not argue that the district court in New York lacked personal jurisdiction over her. The terms of the guaranty provided that an attorney for Credit Alliance would accept service of process for the guarantors, and that they would "agree to the venue and jurisdiction of any court in the State and County of New York." They agreed as well that the guaranty "shall be interpreted according to the laws of the State of New York." The defendant instead asserted that there was no consideration for her guaranty, that she terminated her consent, and that she was discharged. Because the parties stipulated to the application of Indiana law before the court in Indiana there was no reason to defer to the district court in New York on the interpretation of state law. And because the judgment was a default judgment, the rendering court had no more familiarity with the facts than did the registering court. Additionally, when "the creditor seeks to utilize the enforcement machinery of [the registering] district court it is not unreasonable to hold that the [registering] court has the power to determine whether relief should be granted the judgment debtor under 60(b)." 7 Moore's Federal Practice ¶ 60.28[1], at 60–313 (2d ed. 1987). We therefore believe that the district court for the Southern District of Indiana was an appropriate forum for the defendant's Rule 60(b) motion. There was no abuse of discretion in the court's decision to entertain the motion. As to the merits of the defendant's motion, we cannot reach the same conclusion. We find that the district court abused its discretion in granting defendant's Rule 60(b) motion.

Although "[t]his circuit has a well-established policy favoring a trial on the merits over a default judgment," *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir.1984), a default judgment will not be set aside unless " 'the moving party . . . alleges a meritorious defense to the action.' " *A.F. Dormeyer Co. v. M.J. Sales & Distrib. Co.*, 461 F.2d 40, 43 (7th Cir.1972) (quoting *Thorpe v. Thorpe*, 364 F.2d 692, 694 (D.C.Cir.

1966)); *see also Passarella v. Hilton Int'l Co.*, 810 F.2d 674, 675–76 (7th Cir.1987). The defendant's arguments do not present a meritorious defense to the plaintiff's action.

The defendant argues that her guaranty was not supported by consideration, that she terminated her consent to the guaranty, and that she was discharged from her obligation by the plaintiff's extensions of the guaranty. The district court discussed only the latter issue, finding that there was "an alteration of her obligation that effected a discharge." This finding is incorrect under Indiana law.

■ It is undisputed that the defendant signed the original guaranty of Indicoal's obligations. It is also undisputed that she did not read the document, that it was not explained to her, and that she did not receive a copy of it. This is unfortunate; under Indiana law, as in most jurisdictions, however, "[a] person is presumed to understand the documents which he signs." *Carney v. Central Nat. Bank*, 450 N.E.2d 1034, 1038 (Ind.App.1983). The defendant has described the stressful circumstances under which she signed the agreement. Although we are sympathetic to her distress, the defendant has not suggested that her signature was obtained by duress or undue influence, and she has not cited to us cases which would justify relieving her from her contractual obligations because of her emotionally trying situation. We therefore must find that she bound herself to the terms of the guaranty.

■ Those terms included consent without notice "to any agreement or arrangements whatever with subject or anyone else, including without limitation, agreements and arrangements for payment extension, subordination, composition, arrangement, discharge or release of the whole or any part of the Security Obligations." The defendant argues that Credit Alliance's extensions of the guaranty so altered her obligation that she was discharged. She points out that an unconsented extension of time for payment or an agreement to compromise and settle the

principal obligation discharges a guarantor. *Id.; Indiana University v. Indiana Bonding & Surety Co.*, 416 N.E.2d 1275, 1280 (Ind.App.1981); *Lutz v. Frick Co.*, 242 Ind. 599, 602, 181 N.E.2d 14, 16 (1962). This assertion, while true, overlooks the fact that the defendant consented to the extensions and settlements when she signed the guaranty. Although "ordinarily a surety is released if the creditor, without consent of the surety, renews the note, extends the time of payment, impairs the collateral, or alters the contract with the principal; prior consent contained in the instrument is sufficient to bind the surety." *Franklin Bank & Trust Co. v. Reed*, 496 N.E.2d 596, 602 (Ind.App.1986), *aff'd in part and vacated in part*, 508 N.E.2d 1256 (Ind.1987); *Carney*, 450 N.E.2d at 1038. Indiana law provides that a guarantor is a surety. *Id.* at 1036 (citing Ind.Code § 26–1–1–201(40)).

■ The defendant also directs us to cases holding that revocation of a continuing guaranty terminates a creditor's rights to alter the obligation without notice to and consent of the guarantor. She argues that she revoked her consent by unknowingly failing to execute her consent on the extension agreements. She bolsters this evanescent argument by citing Indiana cases that hold a continuing guaranty may be revoked in a reasonable manner. *Houin v. Bremen State Bank*, 495 N.E.2d 753, 758 (Ind.App. 1986) (citing *LaRose v. Logansport Nat. Bank*, 102 Ind. 332, 344–45, 1 N.E. 805, 812 (1885)); *Vidimos, Inc. v. Vidimos*, 456 N.E.2d 455, 458 (Ind.App.1983) (citing *LaRose*). Again it is true that Indiana recognizes revocations that are reasonable under the circumstances. It is also true, however, that guaranties are interpreted in the same manner as are other contracts, *Kordick v. Merchants Nat. Bank & Trust Co.*, 496 N.E.2d 119, 122 (Ind.App.1986); *Loudermilk v. Casey*, 441 N.E.2d 1379, 1383 (Ind.App.1982), and where the guaranty language is unambiguous, "the construction of the guaranty is a question of law." *Skrypek v. St. Joseph Valley Bank*, 469 N.E.2d 774, 777 (Ind.App.1984); *Loudermilk*, 441 N.E.2d at 1383. "Parol evidence is inadmissible where there is no ambiguity

in the [guaranty] language." *Skrypek*, 469 N.E.2d at 777.

The guaranty at issue here clearly states that the guarantors must provide written notice of their termination. The language is unambiguous. In the *Vidimos* case, by contrast, the guaranty did not specifically provide for a method of revocation. "A continuing guaranty which is for an indefinite period is revocable by the guarantor provided that he does so reasonably.... This right of revocation exists absent any provision in the guaranty agreement recognizing it." *Vidimos*, 456 N.E.2d at 458 (citations omitted). The court's concern in this case was that the guaranty not be understood as irrevocable, when it did not explicitly provide for a method of revocation. Where the parties agree to a method for revoking the guaranty, as in *Houin*, that method should be followed. Although the defendant relies on *Houin* for the proposition that any reasonable method of revocation is effective, the *Houin* court specifically stated, albeit in dicta, that "oral notice of revocation when the contract called for written notice was not reasonable." *Houin*, 495 N.E.2d at 759.

The defendant suggests that the "revocation event occurred in the only reasonable manner one can employ, when one is permitted to remain ignorant of the guaranty: By Mrs. Campbell's failure to execute her consent on the Extension Agreement prepared by Credit Alliance for her signature." The defendant, however, had consented to the extension in the original guaranty. This prior consent was binding. *Franklin Bank*, 496 N.E.2d at 602; *Carney*, 450 N.E.2d at 1038. Thus her failure to sign an unnecessary extension agreement cannot be said to effect a revocation. The defendant remained bound by the terms of her guaranty. Extensions of the time for payment, because of her earlier consent, did not discharge the defendant. Although we, like the district court, are sympathetic to the defendant's plight, we find that the district court abused its discretion in finding under Indiana law that the defendant was discharged.

■ The fact that the defendant did not receive actual notice of the plaintiff's suit in the Southern District of New York does not relieve the defendant from her obligations. By the terms of the guaranty she waived her right to personal service of process. She and the other guarantors designated a New York attorney and Credit Alliance as agents for service of process, with notice of such service to be sent by mail to the guarantors within three days at the address shown on the guaranty. The plaintiff fulfilled its obligations by sending two letters by certified mail to the address defendant had provided on the guaranty. These letters were returned to the plaintiff, however, because the defendant had moved to a new address. The defendant's failure to notify the plaintiff of her change of address is perhaps understandable in light of the fact that she did not read the guaranty before (or after) signing it; as we discussed above, however, the defendant is bound by the terms of the guaranty. She cannot now complain about the plaintiff's failure to notify her of the lawsuit when the failure was a result of defendant's own actions.

■ The defendant argues that the guaranty was not supported by consideration. The district court apparently found this argument to be meritless and did not discuss it. We also find no merit to this contention.

The guaranty was dated May 22, 1978. The conditional sales contract and the assignment were dated May 18, 1978. The check that Credit Alliance issued to Stockberger Machinery for Indicoal's purchase of the mining equipment was dated May 23, 1978. The guaranty's stated purpose was to induce Credit Alliance to accept the assignment from Stockberger Machinery. Credit Alliance did accept the assignment as evidenced by its issuance of the check to Stockberger Machinery.

Where a guaranty is executed subsequently to the principal contract, in order for the guaranty to be regarded as being made at the same time so as to constitute a part of the same transaction and be supported by the same consideration it must generally be shown that:

(1) The guaranty was executed pursuant to an understanding had before and was an inducement to the execution of the principal contract; or

(2) The guaranty was delivered before any obligation or liability was incurred under the principal contract; or

(3) The guaranty was made pursuant to a contract provision; or

(4) The principal contract does not become operative until the execution of a guaranty; or

(5) The guaranty expressly refers to a previous agreement between the principal debtor and creditor which is executory in its character and embraces prospective dealings between the parties.

*Davis v. B.C.L. Enters., Inc.*, 406 N.E.2d 1204, 1205–06 (Ind.App.1980). Because these requirements are expressed in the disjunctive, only one need be satisfied to demonstrate that the guaranty is supported by consideration. We believe that the first requirement, at least, is satisfied. The guaranty was executed on May 22, 1978, in order to induce the plaintiff, Credit Alliance, to accept the assignment of the conditional sales contract. The conditional sales contract, dated May 18, 1978, reflected the seller's intention to assign the contract. The plaintiff accepted this assignment when it issued its check to Stockberger Machinery on May 23, 1978, one day after the guaranty was executed. The guaranty was supported by adequate consideration.

### III.  CONCLUSION

Because we have found that the defendant raised no meritorious defenses to the default judgment entered against her, we find the district court abused its discretion in granting defendant's Rule 60(b) motion for relief from judgment. Each party shall bear its or her own costs. The district court's order is therefore

REVERSED.